**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John B. GREEN, Defendant-Appellant.**

**No. 83–1107.**

United States Court of Appeals, Ninth Circuit.

Argued Nov. 16, 1983.

Submitted Sept. 10, 1984.

Decided Oct. 23, 1984.

As Amended Jan. 14, 1985.

trict court's denial of attorney fees.

Janet Goldstein, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Mark Heaney, Wilfred A. Hearn, Jr., Los Angeles, Cal., for defendant-appellant.

Appeal from the United States District Court for the Northern District of California.

Before MERRILL, WALLACE, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

Green appeals his conviction on one count of mail fraud under 18 U.S.C. § 1341 and one count of filing a false official statement in violation of 18 U.S.C. § 1001. We affirm.

## FACTS AND PROCEEDINGS BELOW

Appellant John Green was the quality assurance director for Con-Chem, Inc. ("Con-Chem"), a Los Angeles manufacturer of chemical coatings. In 1978 Con-Chem attempted to secure a contract with Bechtel Power Corporation ("Bechtel") to supply coatings for use in the "Level I area" of a nuclear power plant at Hope Creek, New Jersey. The Level I area consists of a chamber housing the reactor and cooling system and is a critical area of the nuclear plant from a safety standpoint.

In order for Con-Chem coatings to qualify for use in Level I areas they were required by the Nuclear Regulatory Commission ("NRC") to pass safety-related tests. Con-Chem began a testing program to obtain approval for Level I use of its coatings in 1977; the program came under the direction of Green in 1978.

Con-Chem's coatings performed poorly. Because testing indicated that Con-Chem materials were not suitable for Level I use, Green falsified the test report and delivered it to Bechtel. Later, Green sent Bechtel photographs which purportedly depicted tested samples. The samples in the photographs were actually new samples which had not been tested.

Several months later, a Con-Chem employee informed the FBI of Green's falsifications. Green was indicted on four counts of mail fraud and one count of making a false official statement. Prior to trial, the court dismissed Count Two on the government's motion.

The case was then tried to a jury. The jury was unable to reach a unanimous verdict on Count One. The court granted the government's motion to dismiss Count One. The jury convicted Green of Counts Three (mail fraud) and Five (false official statements). It found him not guilty of Count Four. Green was sentenced and fined $6,000.

## ISSUES

1. Was there sufficient evidence to convict under 18 U.S.C. § 1341 and 18 U.S.C. § 1001?

2. Do the court's jury instructions require reversal?

## DISCUSSION

### 1. Sufficiency of the Evidence.

A. Standard of Review

We must determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found Green guilty beyond a reasonable doubt of the essential elements of the offenses charged. See *United States v. Fleishman*, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

B. Evidence Under § 1341

(1) Intent to deceive

■■■ The government satisfies the requirement of proof of specific intent under section 1341 if it proves the existence of a scheme which was "reasonably calculated to deceive persons of ordinary prudence and comprehension," and this intention is shown by examining the scheme itself. *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), cert. denied, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980) (quoting *Irwin v. United States*, 338 F.2d 770, 773 (9th Cir.1964), cert. denied, 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965)).

It was Green's primary line of defense at trial that he did not intend to deceive Bechtel, although he admits having altered the tests and faking the photographs. Green maintained that he believed Bechtel had already decided to use Con-Chem's coatings, that they would not rely on test reports for any purpose except to make their files complete, and that Bechtel wanted positive test reports even if they had to be falsified.

While there was some evidence which at least suggested each of the points critical to Green's story, there was evidence which discredited his defense and supported the government's charges. The jury chose to believe the government's version of Green's intentions. There was sufficient evidence for them to do so.

### (2) Furtherance of the fraud

■ The government must prove that the mailing which forms the basis for the fraud count was made for the purpose of executing the fraudulent scheme. *United States v. Price*, 623 F.2d 587, 593 (9th Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

Green argues that there is no evidence the mailing relied on for Count Three contributed to the success of any scheme. Green's argument borders on the frivolous. Bechtel, using the falsified report, approved Con-Chem coatings for the Hope Creek project and notified Con-Chem by mail. This mailing took place in June and is the mailing which forms the basis of Count Three. It clearly furthered execution of the fraud, since the whole purpose of the fraud was receipt of Bechtel's approval.

### (3) Use of the mail

The June letter of approval from Bechtel to Con-Chem was placed in an outgoing mail basket at Bechtel. Green argues there was insufficient evidence to make the inference that the United States mail was actually utilized.

■ Direct proof of mailing is not required. *United States v. Brackenridge*, 590 F.2d 810, 811 (9th Cir.), cert. denied, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979). Evidence of routine custom and practice can be sufficient to support the inference that something is mailed. Id.

The government presented testimony by a Bechtel employee that it was the routine at Bechtel for mail in the outgoing basket to be picked up and placed in the United States mail. The evidence was sufficient for the jury to determine that the mail was used.

### C. Evidence Under § 1001

### (1) Materiality

■ The materiality requirement of section 1001 is satisfied if the statement is capable of influencing or affecting the federal agency. *United States v. Duncan*, 693 F.2d 971 (9th Cir.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). The false statement need not have actually influenced the government agency.

The government presented evidence that the test report falsified by the defendant was one of the documents upon which the NRC might rely in determining whether to grant an operating license for a nuclear facility. There was sufficient evidence for the jury to conclude that Green's false statements were material.

### (2) Jurisdiction

■ In order for a false statement to be punishable under section 1001, it must concern a matter within the jurisdiction of a department or agency of the United States. Under section 1001, the false statement need not be made directly to the government agency; it is only necessary that the statement relate to a matter in which a federal agency has power to act. *United States v. Balk*, 706 F.2d 1056, 1059 (9th Cir.1983).

The test reports falsified by Green concerned materials to be used in a Level I area of a nuclear power plant. In order for

these materials to qualify for use in Level I, they were required by NRC to pass safety-related tests. The jury could have concluded that Green's false statements related to a matter which was the concern of a federal agency.

## 2. Jury Instructions.

### A. Standard of Review

■■■■ Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing they constitute an abuse of the trial court's discretion. *United States v. Rohrer*, 708 F.2d 429, 431 (9th Cir.1983). Individual instructions must be viewed in the context of all instructions given. *United States v. Lee*, 589 F.2d 980, 985 (9th Cir.), cert. denied, 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979).

### B. Merits

#### (1) Specific intent

■■■ The court instructed the jury on the mail fraud count that the government was required to prove beyond a reasonable doubt "that the defendant acted with the specific intention to defraud, that is, to deceive or mislead Bechtel in its selection or use of coatings, rather than as a result of ignorance, mistake, or accident."

Green contends that the court erred in failing to differentiate between intent to defraud and intent to deceive. He argues that intent to defraud, unlike intent to deceive, requires the intent to deprive someone of some right through deceit.

This court has at least twice approved descriptions of specific intent for mail fraud in terms of "deceit." See *Bohonus*, 628 F.2d at 1172 (specific intent proven if "scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension") (emphasis added); *Irwin*, 338 F.2d at 773 (scheme to defraud is a "scheme reasonably calculated to deceive persons of ordinary prudence and comprehension") (emphasis added).

Even assuming that the defraud/deceit distinction is valid, the instruction was sat-

isfactory. The context in which the word deceit was used suggests depriving Bechtel of its right to make an informed choice among coatings.

#### (2) Good faith defense

■■■■ Green argues it was an abuse of discretion for the court not to give an instruction on his good faith defense. A defendant is not entitled to a separate good faith instruction when the court gives an adequate instruction on specific intent. See, e.g., *United States v. Cusino*, 694 F.2d 185, 188 (9th Cir.1982) (instruction on "specific intent to defraud can be deemed an instruction on good faith"), cert. denied, —— U.S. ——, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983); accord *United States v. Gambler*, 662 F.2d 834, 837 (D.C.Cir.1981). The instruction given on specific intent was thorough.

#### (3) Jurisdictional knowledge

Green argues that it was error for the district court not to have instructed on jurisdictional knowledge. He relies on our decision in *United States v. Yermian*, 708 F.2d 365 (9th Cir.1983), rev'd, —— U.S. ——, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984). In reversing this court, the Supreme Court specifically held that actual knowledge that a matter is within the jurisdiction of a federal agency is not required in order to establish a violation of section 1001. The Supreme Court found it unnecessary to decide, however, whether some other less culpable mental state must be proved with respect to federal agency jurisdiction. *Yermian*, —— U.S. ——, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984).

■■■ We are now squarely presented with the question reserved in *Yermian*. In deciding this matter of first impression, we have carefully reviewed the Supreme Court's decision in *Yermian* as well as the language and legislative history of section 1001. We are persuaded that no mental state is required with respect to federal involvement in order to establish a violation of section 1001.

First, no mental state with respect to federal jurisdiction is evident from the language of section 1001. There are simply no adverbs or phrases modifying the jurisdictional requirement. As the Supreme Court observed in *Yermian:*

> [t]he statutory language requiring that knowingly false statements be made 'in any matter within the jurisdiction of any department ·or agency of the United States' is a jurisdictional requirement. Its primary purpose is to identify the factor that makes the false statement an appropriate subject for federal concern.

Id. at ——, 104 S.Ct. at 2940.

Second, the legislative history of section 1001 supports the conclusion that Congress did not intend to require jurisdictional knowledge. The original Act from which section 1001 is derived was narrowly drawn to proscribe false claims by military personnel against the government. Act of March 2, 1863, ch. 67, 12 Stat. 696. From 1863 until 1918, this original Act was subject to minor changes, including a revision making the Act applicable to "every person" and not just military personnel. Act of December 1, 1873, approved June 22, 1874.

In 1918, the Act was further revised and the false statement provision relevant to this discussion was added. Act of October 23, 1918, ch. 194, 40 Stat. 1015 (1918 Act). The 1918 Act was interpreted narrowly to proscribe only false statements made with intent to cause pecuniary or property loss to the federal government. *United States v. Cohn,* 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616 (1926). In so interpreting that statute, the Supreme Court rejected the government's contention that the 1918 Act should be construed broadly as prohibiting any interference with or obstruction of one of the government's functions by fraudulent means. Id. at 346, 46 S.Ct. at 253.

In response to this narrow construction of the federal false statements statute, Congress undertook to amend that statute in 1934. The 1934 provision, which was eventually enacted into law, broadened the scope of the false statements statute by omitting the specific intent language. Act of June 18, 1934, ch. 587, 48 Stat. 996. Congress' purpose in amending the 1918 Act was to remove the prior limitation on the statute's coverage to cases involving pecuniary or property loss to the government and to extend the Act's coverage to those deceptive practices which might result in the frustration of authorized government functions. *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941).

Finally, appellant argues that absent some state of mind requirement, section 1001 becomes a "trap for the unwary." To the contrary, the .Court in *Yermian,* in response to this argument noted that "[i]n the unlikely event that § 1001 could be the basis for imposing an unduly harsh result on those who intentionally make false statements to the Federal Government, it is for Congress and not this court to amend the criminal statute." —— U.S. ——, 104 S.Ct. at 2943. The short response to appellant's concern that absent a culpability requirement section 1001 becomes a trap for the unwary therefore is simply that Congress intended to cut a broadcloth.

While we understand appellant's concerns, we observe that section 1001 explicitly incorporates certain limitations which guard against its being so highly penal as to be infirm. First, in order to be within the scope of section 1001, the false statement must involve a matter within federal agency jurisdiction at the time it was made. Second, a person is guilty of violating section 1001 only if he "knowingly and willfully" makes a false statement. A person who knowingly and willfully makes a false statement cannot be deemed to have engaged in entirely innocent conduct. Finally, section 1001 has been construed as being applicable only to material misstatements or falsehoods. *Duncan,* 693 F.2d at 975; *United States v. Carrier,* 654 F.2d 559, 562 (9th Cir.1981).

■ No culpable mental state must be proved with respect to federal agency jurisdiction in order to establish a violation of section 1001. The trial judge did not abuse

his discretion in refusing to give an instruction on jurisdictional knowledge.

AFFIRMED.