42 F.3d 1403
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Santos Alvarez FELIX, Adolfo Leon Gomez, and Anselmo Bernal
Hernandez, Defendant-Appellants.
 Nos. 93-50471, 93-50472 and 93-50483.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1994.
Decided Nov. 30, 1994.
 
 1
 Before: WALLACE, Chief Judge, REINHARDT, Circuit Judge, and TANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Santos Alvarez Felix, Adolfo Leon Gomez, and Anselmo Bernal Hernandez were convicted of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 846 and 841(a)(1), and of possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Hernandez appeals his conviction and sentence on the grounds that: (1) the judge's comments from the bench deprived him of a fair trial; (2) the district court erred in failing to offer a requested jury instruction; (3) the district court erred in denying Hernandez's motion for a new trial based on newly discovered evidence; and (4) Hernandez was denied effective assistance of counsel at sentencing. All three defendants challenge the district court's application of ten-year mandatory minimum sentences enacted after the date of their offense. See 21 U.S.C. Sec. 846. In addition, Felix and Gomez argue that they are entitled to adjustments in their offense levels under the Sentencing Guidelines because: (1) they conspired to distribute less than five kilograms of cocaine; (2) they accepted responsibility; and (3) they played a minor or minimal role in the offense.
 
 
 4
 We affirm the conviction of Hernandez, finding no error on the part of the district court with respect to his conviction. We vacate Felix's sentence and remand for resentencing, because the ten-year mandatory minimum was enacted after the date of his offense and its application was prejudicial in light of the Guideline range found to be applicable by the district court. We also vacate Gomez's sentence and remand for resentencing, because the district court should not have applied the mandatory minimum and because the court believed that any reduction under the Guidelines was "academic" in view of the mandatory minimum. We affirm Hernandez's sentence, notwithstanding the error in applying the ten-year minimum, because in his case a sentence of more than ten years was required by the Guidelines.
 
 I.
 
 5
 In late 1987, FBI Special Agent Henry Tenorio was working undercover, attempting to infiltrate groups with access to large amounts of heroin and cocaine. On October 28, cooperating witness Filiberto Contreras introduced Agent Tenorio to Defendant Anselmo Hernandez, who is Contreras' distant cousin. Agent Tenorio expressed his interest in buying cocaine and showed Hernandez $95,000 to establish that he was a legitimate drug dealer. Although Agent Tenorio testified that his ultimate goal was to purchase five kilograms of cocaine, he planned to buy only a small sample on October 28. Agent Tenorio testified that he "may have mentioned to him [Hernandez] specifically five kilos" at their first meeting. Hernandez told Agent Tenorio that he had a "connection" in Mexico, and could obtain cocaine at a price of $14,000 per kilo. No transaction occurred on October 28, however, because Agent Tenorio indicated his desire to obtain gram samples from the source before making a large purchase.
 
 
 6
 Contreras subsequently scheduled another meeting between Agent Tenorio and Hernandez for December 2, 1987. On that date, Agent Tenorio, undercover Special Agent Teresa Moreno, Contreras, and Hernandez met at Hernandez's home. Agent Tenorio testified that he "reiterated to him [Hernandez] that I was interested in buying five kilos of cocaine." However, he planned only to purchase gram samples of cocaine on December 2, to avoid arousing suspicion. Hernandez informed Agent Tenorio that the price would be $16,500 per kilo, rather than $14,000 per kilo (the figure mentioned at the October 28 meeting) and proceeded to make several telephone calls.
 
 
 7
 At Hernandez's instruction, Contreras and the agents followed Hernandez to a parking lot in Huntington Park. A short time later, Defendant Gomez arrived in a pickup truck. The agents, Hernandez, and Contreras followed Gomez to a private residence in Huntington Park, where Agent Tenorio was introduced to Ascanio Alvarez. Alvarez made a series of telephone calls, and then discussed price and availability with Agent Tenorio. Gomez left the residence for approximately 15 or 20 minutes. Shortly after his return, the agents were informed that the delivery of cocaine was delayed because the courier was having traffic problems.
 
 
 8
 Approximately one hour later, Defendant Felix arrived at the Huntington Park residence carrying a large box. Inside the box was slightly under five kilograms of cocaine, hidden beneath soiled diapers. Felix gave the box to Alvarez, who took the packages of cocaine out and gave Agent Tenorio five gram samples. Agent Tenorio explained that he wished to test the quality of each kilo before purchasing a larger amount. At that point, Alvarez became highly irritated, because he had expected Agent Tenorio to purchase the entire quantity of cocaine that had been delivered that day (almost five kilograms). Alvarez repackaged the cocaine and ordered Felix to take it away.
 
 
 9
 After Felix left, Gomez apologized for the confusion. At Gomez's request, Alvarez allowed Agent Tenorio to take the five gram samples in order to test their quality. Alvarez instructed Agent Tenorio to return within 30 minutes if he wished to buy them. Agent Tenorio left and took the five gram samples to an FBI field office in Santa Ana, which confirmed that they were indeed cocaine.
 
 
 10
 In the meantime, Felix had left the Huntington Park residence with the cocaine, under FBI surveillance. Felix stopped at a public storage facility, but was unable to get in. He then drove to a private residence. FBI agents surrounded the residence and conducted a search. Pursuant to Felix's consent, the agents searched his car and found the diaper box containing just under five kilograms of cocaine. FBI agents arrested Felix, but dismissed the charges against him shortly thereafter, in order to avoid exposing Agent Tenorio or Contreras.
 
 
 11
 On November 20, 1992, almost five years after these events took place, a federal grand jury returned indictments against Felix, Gomez, Hernandez, and Alvarez.[1] Each was charged with conspiracy to possess with intent to distribute "approximately 5 kilograms" of cocaine, in violation of 21 U.S.C. Sec. 846 and 841(a)(1), and with possession with intent to distribute "approximately 4,643 grams" of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The three defendants were tried in the U.S. District Court for the Central District of California in February and March 1993, with the Honorable James Ideman presiding. On March 4, 1992, a twelve-person jury returned guilty verdicts against all three defendants on both counts.
 
 
 12
 Judge Ideman sentenced the defendants on June 21, 1993. The court found that the ten-year mandatory minimum sentence, prescribed in 21 U.S.C. Sec. 846, applied to each of the defendants. Hernandez was found to have a sentencing range of 135-169 months, and the court sentenced him to 135 months, the minimum allowable under the guidelines. The court found Felix's sentencing range to be 108-135 months, and sentenced him to 120 months, which the district judge believed to be the minimum sentence allowable under 21 U.S.C. Sec. 846. The court determined that Gomez's sentencing range under the guidelines was 121-151 months, and sentenced him to the minimum 121 months allowable in this range.
 
 II.
 A. HERNANDEZ
 1. Trial judge's comments
 
 13
 Hernandez argues that his conviction should be overturned because the district judge's comments from the bench deprived him of a fair trial. The defendant calls attention to five comments made by Judge Ideman and alleges that these remarks hampered his attempt to impeach Contreras, a key government witness.
 
 
 14
 The trial judge's comments are reviewed for abuse of discretion. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988) (citing United States v. Greene, 698 F.2d 1364, 1375 (9th Cir.1983)), cert. denied, 492 U.S. 906 (1989). We will order a new trial where the record demonstrates actual bias or "leaves the reviewing court with the abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525 (9th Cir.1986) (quoting Warner v. Transamerica Insurance Co., 739 F.2d 1347, 1351 (8th Cir.1984)).
 
 
 15
 At trial, Hernandez attempted to show that he had no predisposition to sell drugs, but only did so after Contreras, the government's informant, repeatedly insisted that Hernandez obtain cocaine for him. The government countered by introducing testimony from Contreras that he had seen Hernandez selling drugs during 1987, prior to the aborted transaction at issue in this case.[2] Contreras' credibility was therefore integral in establishing that Hernandez had the predisposition to sell cocaine. Hernandez attempted to impeach Contreras, by introducing evidence that Contreras had been convicted for smuggling aliens while working as a government informant. Hernandez also attempted to suggest that Contreras had received an inordinately lenient sentence for this crime, in exchange for testifying falsely against Hernandez.
 
 
 16
 During and after Contreras' testimony, the district judge made several comments that, Hernandez argues, reflected his partiality. However, our cases give the trial judge broad discretion to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence, and prevent undue repetition. United States v. Mostella, 802 F.2d 358, 361 (9th Cir.1986). A trial judge may also comment on the evidence, though "he may not either distort it or add to it." White v. City of Norwalk, 900 F.2d 1421, 1426 (9th Cir.1990) (quoting Quercia v. United States, 289 U.S. 466, 469-70 (1933)).
 
 
 17
 In this case, the district court acted within its proper bounds. When Hernandez's counsel asked Contreras whether he had been stopped by the Border Patrol on June 1, 1992, the district judge interjected:
 
 Comment 1
 
 18
 IF HE COMMITTED AN OFFENSE AND WAS CONVICTED, YOU CAN BRING OUT WHATEVER HAPPENED TO HIM IN COURT, BUT LET'S GO ON TO SOMETHING THAT IS MORE GERMANE TO THIS CASE. I DON'T SEE ANY REASON I GOING THROUGH A SEARCHING EXAMINATION OF EXACTLY ALL THE DETAILS OF THIS.
 
 
 19
 Immediately afterwards, defense counsel inquired into the length of time Contreras spent in jail. The district judge interceded with a comment regarding sentences for alien smuggling:
 
 Comment 2
 
 20
 THIS IS A VERY UNDERPUNISHED OFFENSE AND MANY PEOPLE GET OFF WITHOUT DOING A DAY IN JAIL.
 
 
 21
 Later during cross-examination of Contreras, Hernandez's counsel asked about the witness' many years of work as a Government informant. When defense counsel asked whether this work required Contreras to tell lies, the following exchange occurred:
 
 Comment 3
 
 22
 THE COURT: COUNSEL, YOU'RE REALLY BEATING A DEAD HORSE. I'M SURE THE JURY UNDERSTANDS--
 
 
 23
 MR. ADLER: THANK YOU, YOUR HONOR.
 
 
 24
 THE COURT: --THAT TO WORK UNDERCOVER, LYING IS PART OF THE JOB.
 
 
 25
 After Contreras testified, the defendants called to the stand Agent Thomas Keyser of the U.S. Border Patrol. Hernandez's counsel asked Agent Keyser about Mr. Contreras' arrest and conviction for alien smuggling, prompting the following comment:
 
 Comment 4
 
 26
 ... I'M WONDERING WHAT THE RELEVANCE OF ALL THIS IS UNDER THE CIRCUMSTANCES. WE KNOW THAT CONTRERAS VIOLATED THE LAW AND TRANSPORTED SOME ALIENS ILLEGALLY. SO WHAT'S THE POINT OF ALL THIS?
 
 
 27
 Before Hernandez's counsel had an opportunity to respond, Judge Ideman added:
 
 Comment 5
 
 28
 OKAY. I JUST DON'T THINK WE NEED TO GO INTO ALL THESE DETAILS ABOUT HOW CONTRERAS DID WHAT HE DID. HE DID WHAT HE DID, AND HE WAS CAUGHT, AND HE WENT TO JAIL FOR IT.
 
 
 29
 SO LET'S GO ON TO SOMETHING ELSE.
 
 
 30
 Having reviewed these remarks in context, we find that they fall within the district court's broad discretion to manage the conduct of trial, to prevent repetition, and to comment on the evidence. Of the five comments that Hernandez challenges, the second comes closest to overstepping the district judge's authority. Hernandez's counsel was inquiring about the punishment Contreras received for his alien smuggling offense, attempting to suggest that Contreras received an unusually lenient sentence in exchange for testifying falsely against Hernandez. The judge remarked that alien smuggling is an "underpunished" offense for which many people "get off without doing a day in jail." While this remark comes close to offering testimony on behalf of the government, any prejudicial effect that it might otherwise have had is rendered harmless by the later testimony of Agent Keyser, who stated that Contreras "got a very severe sentence compared to other first time offenders," and by the absence of any evidence contradicting that testimony. Overall, the district judge's comments do not persuade us that he projected an appearance of partiality.
 
 2. Jury Instructions
 
 31
 In an effort to remedy the trial judge's comments regarding Contreras' credibility, Hernandez requested the following jury instruction:
 
 
 32
 You have heard evidence that Filiberto Bernal Contreras has been convicted of a crime involving dishonesty. You may consider this evidence, along with other pertinent evidence, in deciding whether and how much weight to give his testimony. (emphasis added).
 
 
 33
 The district court ruled that the words "involving dishonesty" should be deleted. It gave the requested instruction with those two words left out.
 
 
 34
 We review jury instructions for an abuse of discretion. United States v. Bordallo, 857 F.2d 519, 527 (9th Cir.1988); United States v. Green, 745 F.2d 1205, 1209 (9th Cir.1984), cert. denied, 474 U.S. 925 (1985). A trial judge has substantial latitude in crafting jury instructions, as long as they provide fair and adequate guidance on the issues presented. Bordallo, 857 F.2d at 527.
 
 
 35
 Although the district judge in this case might have included the requested language in the jury instruction, it was not an abuse of discretion for him to fail to do so. Alien smuggling could, under the circumstances of this case, be considered a crime of dishonesty reflecting on the credibility of the witness. Under Federal Rule of Evidence 609(a), only felony convictions and convictions involving dishonesty or false statement may be admitted to impeach a witness. The circumstances of Contreras' conviction indicate a propensity towards deceit, that might lead a jury to question whether the witness was testifying truthfully.[3]
 
 
 36
 The fact that Contreras' alien smuggling conviction may have been for a crime of dishonesty does not, however, establish that the district court abused its discretion by omitting that fact from the requested instruction. The judge's refusal to include the language suggested by the defendant did not prevent the jury from considering Contreras' deceitful conduct in evaluating his credibility as a witness. Whether or not to specifically instruct the jury that alien smuggling was a crime of dishonesty was a matter within the discretion of the trial court. The instruction given provided the jury with adequate guidance.
 
 3. Newly Discovered Evidence
 
 37
 Hernandez argues that the district court erred in refusing to order a new trial, based on evidence that Hernandez discovered after trial. The denial of a motion for a new trial is reviewed for abuse of discretion. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). Here, the district court did not abuse its discretion by declining to order a new trial based on newly discovered impeachment evidence.
 
 
 38
 The evidence that Hernandez wished to introduce consists of statements from five witnesses that would contradict the testimony of Contreras and Bernal. At trial, Contreras and Bernal testified that, during 1987, they saw Hernandez engage in activity they believed was related to the sale of cocaine. Contreras also testified that he had no contact with Hernandez before about 1987, while Bernal testified that she first met Hernandez in 1986 or 1987. The dates when these witnesses met Hernandez are not relevant to the question whether Hernandez committed the acts of which he was convicted, nor are they relevant to Hernandez's predisposition to sell cocaine. The testimony that Hernandez wished to introduce concerns only the question whether Contreras and Bernal had contact with Hernandez prior to 1986. According to Hernandez, the proffered statements would show that Contreras and Bernal lied on the witness stand and, therefore, that their testimony regarding Hernandez's predisposition was not credible.
 
 
 39
 Rule 33 of the Federal Rules of Criminal Procedure allows the court to grant a new trial based on newly discovered evidence if required in the interest of justice. For newly discovered evidence to warrant a new trial, the defendant must show:
 
 
 40
 1) the evidence is newly discovered and was unknown to the defendant at the time of trial; 2) the evidence is material, not merely cumulative or impeaching; 3) the evidence will probably produce an acquittal; and 4) failure to learn of the evidence sooner was not due to lack of diligence.
 
 
 41
 United States v. Walgren, 885 F.2d 1417, 1428 (9th Cir.1988) (emphasis added). Impeachment evidence is material if it is "so powerful, that if it were believed by a trier of fact, it could render the witness' testimony totally incredible." United States v. Davis, 960 F.2d 820, 825 (9th Cir.1992).
 
 
 42
 The evidence that Hernandez seeks to offer is insufficient to warrant a new trial. The sole purpose of this evidence is to attack the credibility of Contreras and Bernal regarding the length of their acquaintance with Hernandez. At trial, Hernandez attempted to impeach Contreras and Bernal, by offering testimony from other witnesses on this topic. Thus, the testimony that Hernandez seeks to introduce is merely cumulative. Moreover, the testimony of the additional witnesses is not so powerful as to render the testimony of the government's witnesses "totally incredible." Cf. Davis, 960 F.2d at 825. The jury might still conclude that Contreras and Bernal were telling the truth about the date on which they met Hernandez, and that Hernandez's witnesses are lying. And even if the jury believed that Hernandez's new witnesses were correct, it might nevertheless find that Contreras and Bernal were merely mistaken, and not lying, about the date on which they met Hernandez.
 
 
 43
 The evidence proffered by Hernandez bears only a tangential relationship to this case. Contrary to Hernandez's suggestion, it would not render the testimony of Contreras and Bernal "totally useless." Although the evidence might cast doubt on the credibility of Contreras and Bernal, the district court's denial of Hernandez's motion for a new trial did not amount to an abuse of discretion.
 
 4. Sufficiency of the evidence
 
 44
 Hernandez also argues that the evidence of record was insufficient to sustain his conviction. This claim is without merit. We apply a highly deferential standard when reviewing the sufficiency of the evidence. United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir.1992). Evidence is viewed in the light most favorable to the prosecution, and the conviction should be sustained if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 45
 Hernandez contends that the government failed to meet its burden on the question whether he had a predisposition to commit the acts charged in the indictment. Once a defendant shows that the government induced him to commit the offense in question, the government must establish beyond a reasonable doubt that the defendant had a predisposition to commit the offense. Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992). As Hernandez points out, the only evidence of predisposition in this case was the testimony of Bernal and Contreras. Hernandez contends that their testimony is "incredible on its face" and therefore insufficient to sustain his conviction. See United States v. Lopez, 803 F.2d 969, 973 (9th Cir.1986). In support of this assertion, Hernandez explains that "each witness had a strong motivation to lie."
 
 
 46
 Even if we assume that Contreras and Bernal had incentives to incriminate Hernandez, this does not establish that their testimony is incredible on its face, as our cases require. Lopez, 803 F.2d at 973; United States v. Whitten, 706 F.2d 1000, 1007 (9th Cir.1983), cert. denied, 465 U.S. 1100 (1984). Despite their questionable motivations, the jury could--and apparently did--believe the government's witnesses. Viewed in the light most favorable to the government, there was sufficient evidence of Hernandez's predisposition to commit the crimes in question.
 
 5. Effective Assistance of Counsel
 
 47
 Hernandez argues that, even if his conviction is upheld, his sentence should be overturned because he was denied effective assistance of counsel at his sentencing hearing. Specifically, Hernandez submits that his attorney failed to argue that placement in Criminal History Category I would be more appropriate than placement in Category II. We find that the attorney's failure to make this argument did not amount to ineffective assistance.
 
 
 48
 The first question is whether jurisdiction exists over a claim of ineffective assistance raised on direct appeal. As a general matter, habeas corpus proceedings are preferable for raising such claims, because they permit the reviewing court to assess the complete record. United States v. Pope, 841 F.2d 954, 958 (9th Cir.1988). However, the appellate court may address claims of ineffective assistance on direct appeal if the record is sufficiently developed to permit resolution of the issue. United States v. Daly, 974 F.2d 1215, 1218 (9th Cir.1992). In this case, the sole basis for Hernandez's claim of ineffective assistance is his attorney's failure to object to his placement in Criminal History Category II. The record is sufficiently developed to permit resolution of this question.
 
 
 49
 At Hernandez's sentencing hearing, the district court accepted the report of the Probation Officer, placing Mr. Hernandez in Category II, and Hernandez's attorney made no objection.[4] To establish ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 667, 687 (1984). Hernandez cannot meet either prong of this test.
 
 
 50
 Under the first prong, the defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. In support of his claim, Hernandez cites the policy statement accompanying Section 4A1.3 of the Sentencing Guidelines. The statement of policy that Hernandez cites is not directly applicable to his case. According to this statement, a court might conclude that a downward departure from Criminal History II is appropriate, where the defendant has "two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of criminal behavior in the intervening period." U.S.S.G. Sec. 4A1.3 (Policy Statement). In contrast, Hernandez had two misdemeanor convictions within four years of his drug trafficking offense. The record reveals that Hernandez's counsel argued forcefully on his behalf at the sentencing hearing, submitting considerable evidence that the defendant should be sentenced at the low end of the applicable range. It seems likely that Hernandez's counsel made a strategic decision to pursue arguments for leniency likely to be effective, rather than to make arguments that would probably prove futile. Hernandez has established neither that his attorney's performance was deficient, nor that he was prejudiced in any way by the decision not to argue for placement in Category I.
 
 
 51
 6. Application of Ten-Year Statutory Minimum
 
 
 52
 Finally, Hernandez argues that the district judge erred in applying the ten-year mandatory minimum sentences contained in 21 U.S.C. Sec. 846, because they were enacted after his offense. The government concedes that application of the ten-year mandatory minimum violates the ex post facto clause of the Constitution.[5] This minimum sentence applies only to violations occurring on or after November 18, 1988. United States v. Inafuku, 938 F.2d 972, 973 (9th Cir.1991). In this case, the indictment charged that the defendants' conspiracy continued to "on or about December 2, 1987." Therefore, the district court's application of the ten-year minimum was plain error.[6]
 
 
 53
 In Hernandez's case, this error had no effect on his sentence, since the Sentencing Guidelines mandate a minimum sentence over ten years, and Hernandez does not challenge the district judge's application of the Guidelines. Under the Guidelines, Hernandez's sentencing range was 135-169 months and the court sentenced him to 135 months. Even though the district court erred in applying the ten-year statutory minimum, this error is harmless because it makes no difference in his ultimate sentence. We therefore affirm the sentence.
 
 B. FELIX
 
 54
 Felix challenges only his sentence, not his conviction. The district court found Felix's sentencing range under the Sentencing Guidelines to be 108-135 months. It applied what it believed to be the statutory minimum, under 21 U.S.C. Sec. 846, in sentencing him to 120 months. On appeal, Felix argues that: (1) the district court erred in applying the statutory minimum enacted after his offense; (2) the district court erred in denying an adjustment under the Sentencing Guidelines, because he conspired to distribute less than five kilograms of cocaine; (3) the district court erred in denying him a reduction under the Guidelines for acceptance of responsibility; and (4) the district court erred in denying him a four-level departure under the Guidelines for "minimal" participation.
 
 
 55
 We remand for resentencing on the first ground, the district court's erroneous reliance on the ten-year minimum contained in 21 U.S.C. Sec. 846. The government concedes that Felix's case must be remanded, because application of this minimum violated the ex post facto clause. Because we remand for resentencing on this ground, we need not reach Felix's arguments regarding the district court's application of the Sentencing Guidelines.
 
 C. GOMEZ
 
 56
 Like Felix, Gomez challenges only his sentence, and not his conviction. Gomez argues: (1) the district court erred in applying the ten-year statutory minimum; (2) he was entitled to an adjustment in his offense level under the Sentencing Guidelines, because the amount he conspired to distribute was less than five kilograms; (3) the district court erred in refusing to reduce his offense level under the Guidelines for acceptance of responsibility; and (4) the district court clearly erred in denying him a reduction for "minor" or "minimal" participation in the conspiracy. We vacate Gomez's sentence and remand to the district court for resentencing, because the district court erred both by applying the ten-year statutory minimum and in its application of the Guidelines.
 
 1. Ten-Year Statutory Minimum
 
 57
 The government concedes that application of the minimum sentence was error, but urges us to affirm Gomez's sentence, because his minimum sentence under the Sentencing Guidelines exceeds ten years. As computed by the district court, Gomez's sentencing range was 121-151 months and he was sentenced to 121 months. Therefore, if the court correctly applied the Guidelines, the erroneous application of the ten-year statutory minimum was harmless.
 
 2. Sentencing Guidelines
 
 58
 At Gomez's sentencing hearing, the district court rejected all the defendant's arguments for reduction. First, the trial judge concluded that the "object of the conspiracy" was five kilograms. Second, the district judge stated his conclusion that the other reductions should be denied, without giving any explanation. We remand for resentencing, because the district judge apparently believed that these reductions were "academic" in view of the ten-year statutory minimum.
 
 
 59
 a. Base offense level
 
 
 60
 The district court's interpretation and application of the Sentencing Guidelines are reviewed de novo. United States v. Keene, 933 F.2d 711, 712 (9th Cir.1991); United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993). The court found that Gomez conspired to distribute five kilograms of cocaine, even though a slightly smaller amount (4.643 kilograms) was actually recovered. Under the Sentencing Guidelines, the base offense level for offenses involving five or more kilograms of cocaine is 32, while the base offense level for offenses involving less than five kilograms of cocaine is 30. U.S.S.G. Sec. 2D1.1. The court determined that the object of the conspiracy was five kilograms of cocaine. The court sentenced all of the co-defendants based on five kilograms, and assigned them a base level of 32.
 
 
 61
 Gomez first argues that the language of the indictment prevented the district judge from finding that he conspired to distribute five kilograms of cocaine and from assigning a base level of 32 under the Guidelines. We reject this contention. The indictment charged that the object of the conspiracy was "approximately five kilos" of cocaine. Contrary to Gomez's argument, the indictment did not concede that the amount he conspired to distribute was less than five kilograms. Moreover, it gave adequate notice to Gomez of the charge against him.
 
 
 62
 However, it is not clear whether the district judge's application of the Sentencing Guidelines complies with our decision in United States v. Petty, 982 F.2d 1374, 1376-77 (9th Cir.1993). As we noted in Petty, the court must make an individualized assessment of the amount that was reasonably foreseeable by each defendant. The commentary accompanying Section 1B1.3, concerning conspiracy convictions, allows conduct to be included in the offense level only if it was within the scope of the defendant's agreement or "reasonably foreseeable" in connection with the criminal activity that the defendant agreed to jointly undertake. U.S.S.G. Sec. 1B1.3 (n. 2). In this respect, the Sentencing Guidelines' approach is distinguishable from the ordinarily harsh result dictated by conspiracy law. Id. Each defendant must be sentenced based on the amount reasonably foreseeable by him, not on the total amount under consideration by all co-conspirators. Petty, 982 F.2d at 1376-77.
 
 
 63
 From the district judge's brief comments during Gomez's sentencing hearing, it is not clear whether he made a determination as to the amount that was reasonably foreseeable by Gomez.[7] Because, as explained infra, we must remand for determination whether Gomez should receive reductions for acceptance of responsibility or minor participation, we need not decide whether the court properly applied Petty. On remand, the district court will have the opportunity to clarify the Petty question.
 
 
 64
 b. Requested reductions
 
 
 65
 After finding that the object of the conspiracy was five kilograms, the district judge stated:
 
 
 66
 I also do not feel that he [Gomez] should have a reduction for either acceptance of responsibility or for minor participation, although under the minimum sentence required in this case, these are largely academic arguments. (emphasis added)
 
 
 67
 The only clue to the court's reasoning is the statement that the reductions were "academic" in view of the ten-year statutory minimum. The court apparently believed that any reduction under the Guidelines would have no bearing on Gomez's sentence. But as the government now concedes, the statutory minimum is not in fact applicable. Therefore, the question whether Gomez should receive the requested reduction is not academic. On remand, the district court should consider whether Gomez is entitled to the reductions requested.
 
 III.
 
 68
 We affirm Hernandez's conviction, finding no error on the part of the district court regarding his conviction. We also affirm Hernandez's sentence, because the district court's erroneous application of the ten-year statutory minimum was harmless in view of the sentence required by the Sentencing Guidelines. We remand Felix's case for resentencing without reaching the question whether there were errors with respect to the Guidelines, because applying the ten-year statutory minimum was prejudicial to Felix whether or not there were also Guidelines errors. We remand Gomez's cases for resentencing because the district court believed that the requested reductions were "academic" in view of the statutory minimum.
 
 
 69
 AFFIRMED as to Hernandez; sentences VACATED and REMANDED as to Felix and Gomez.
 
 
 70
 WALLACE, Chief Judge, concurring and dissenting:
 
 
 71
 I concur in the disposition except for the conclusion that the district judge may have violated United States v. Petty, 982 F.2d 1374 (9th Cir.1993). Petty requires the sentencing judge to determine "(1) the quantity of drugs distributed that were reasonably foreseeable by each [person] and (2) the quantity of drugs distributed that were within the scope of the particular agreement that each entered." Id. at 1376. The district judge stated with respect to Gomez that "the amount under consideration" was five kilograms. The judge also sentenced Gomez for "reasons similar to those stated in the prior defendant's" cases. These reasons included a specific finding that "it was obviously reasonably foreseeable that the parties could produce five kilos." Gomez's attorney, just prior to sentencing, discussed with the court the issue of whether Gomez conspired to distribute five kilograms. At oral argument, the government reminded the district court that each of the five gram samples--packaged in separate bags, of which Gomez was certainly aware--represented a sample from each one of the five kilograms of drugs under consideration.
 
 
 72
 Petty cautions that when someone joins a large conspiracy and only participates in a small portion of it, the sentencing judge should be careful not to group together all of the defendants where the scope of the agreement, with respect to each defendant, was different. 982 F.2d at 1376. This was not done here. In this case, there was only one conspiracy and only one drug transaction. The judge determined that the scope of this one transaction was five kilograms, and that the "parties " involved could produce five kilos. Petty requires nothing more.
 
 
 73
 Therefore, although I would remand Gomez's case to the district court to determine the applicability of the Guideline reduction provisions, any further finding that Gomez participated in and could reasonably foresee a five kilogram drug transaction is, I believe, unnecessary.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although Mr. Alvarez was indicted with the other defendants, he remains a fugitive
 
 
 [2]
 The government also introduced testimony from Ms. Amelia Bernal, a distant relative of Hernandez, relating to his predisposition to sell drugs. Bernal testified that, during 1987, she had seen Hernandez engaged in drug-related activities. She testified to seeing scales and a substance "white like sugar" at Mr. Hernandez's house
 
 
 [3]
 See United States v. Glenn, 667 F.2d 1269, 1273 (9th Cir.1982). In Glenn, this Court stated that a conviction for burglary and theft may be admissible under Rule 609(a), if the crime was actually committed through "fraudulent or deceitful means."
 
 
 [4]
 The Probation Officer based his decision on two prior misdemeanor convictions. In 1984, Mr. Hernandez was convicted of reckless driving. In 1986, he was convicted of carrying a concealed weapon in his vehicle
 
 
 [5]
 Anyone convicted of distributing five kilograms or more of cocaine must be sentenced to minimum of 10 years imprisonment. 21 U.S.C. Sec. 841(a) and (b). Under Section 846, which took effect November 18, 1988, any person who conspires to commit this offense is subject to the same penalty. 21 U.S.C. Sec. 846
 
 
 [6]
 Hernandez and his co-defendants also argue that the ten-year statutory minimum is inapplicable, because the object of the conspiracy was less than five kilograms. Because the government concedes that application of Sec. 846 violated the ex post facto clause, there is no need to consider whether the amount of cocaine met the statutory threshold of five kilograms
 
 
 [7]
 A review of the record shows that Gomez was not present during either of the conversations at which the five kilogram figure was discussed. Agent Tenorio testified that his "ultimate goal" was to purchase five kilograms of cocaine. During his first conversation with Defendant Hernandez on October 28, Agent Tenorio showed Hernandez $95,000. At that meeting, Agent Tenorio testified: "I may have mentioned to him specifically five kilos." The fact that Gomez was not present at this meeting is undisputed. Nor was Gomez present the second time the five kilogram figure was mentioned, during a conversation between Hernandez and Tenorio on December 2. The only evidence at trial relating to Gomez showed that, later on December 2, he: (1) met the agents at a parking lot and led them to a house in Huntington Park; (2) left the residence and returned 20 minutes later, at which time Agent Tenorio was informed that the courier was delayed; and (3) apologized for the misunderstanding between Alvarez and Agent Tenorio, and asked Alvarez to let Tenorio keep the five gram samples