**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Dennis HIROKAWA, Defendant–Appellant.**

by 9th Cir. R. 36–3.

United States of America,
Plaintiff–Appellee,

v.

Michael Furukawa, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

Richard Okada, Defendant–Appellant.

Nos. 07–10517, 07–10518, 07–10538.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 2009.

Filed June 16, 2009.

Lawrence Tong, Assistant U.S., USH–Office of the U.S. Attorney, Honolulu, HI, for Plaintiff–Appellee.

Keith S. Shigetomi, Esquire Attorney At Law Honolulu, HI, for Defendant–Appellant.

Before: REINHARDT, BRUNETTI and THOMAS, Circuit Judges.

## MEMORANDUM *

Dennis Hirokawa, Michael Furukawa, and Richard Okada appeal their convictions and sentences for conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and (excluding Okada) several counts of mail fraud in violation of 18 U.S.C. § 1341. Appellants were convicted along with co-defendant Wesley Uemura—who has not appealed his conviction or sentence—based on their participation in a bid-rigging scheme for the award of small purchase contracts for maintenance and repair work at the Honolulu International Airport. For the reasons stated below, we affirm the judgments of the district court.

■ 1. The district court did not abuse its discretion in admitting the expert opinion testimony of Kenneth Goldblatt under Federal Rule of Evidence 702. With respect to qualifications, the district court was well within its discretion in finding that Goldblatt's decades of experience in construction and estimation qualified him to give testimony on the reasonable value of nonstructural, routine or cosmetic repairs at the airport, notwithstanding the court's concurrent determination that Goldblatt was unqualified to testify about structural repairs or other projects implicating regulations or considerations unique to airports.

■ The district court also did not abuse its discretion in finding Goldblatt's estimation methods to be sufficiently reliable. Appellants' criticisms of those estimations—e.g., his assumptions for labor, overhead and profit, and his failure to account for other costs and contingencies—go to the probative weight, rather than the admissibility, of the evidence and were properly the subjects of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ We also reject appellants' contention that Goldblatt's expert testimony as to the value of the work performed was irrelevant to the fraud charges against them. Although appellants attempt to characterize Goldblatt's testimony as pertaining to only the value of the completed work, the record reflects that Goldblatt's estimates also accounted for a reasonable profit, costs of labor, overhead and other costs that could be factored into a contractor's bid. Appellants themselves acknowledge as much in criticizing the assumptions underlying those estimates. Moreover, as alleged in the indictment, the bid-rigging scheme appellants perpetrated was specifically designed to eliminate yet still give the appearance of competitive bidding in order to obtain government contracts that were "falsely and fraudulently inflated above a fair and reasonable value for the work allegedly performed." It was hardly an abuse of discretion to conclude that Goldblatt's estimates of the value of the work performed would "logically advance[ ] a material aspect of the [government's] case," *Daubert v. Merrell Dow Pharms, Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995), and "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

■ 2. The district court did not abuse its discretion in denying appellant Hirokawa's request to testify in surrebuttal. "A trial court has broad discretion to admit or exclude rebuttal or surrebuttal evidence," *United States v. McCollum,* 732 F.2d 1419,

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1426 (9th Cir.1984), including limiting such evidence "to new evidence." *United States v. Clark,* 617 F.2d 180, 187 (9th Cir.1980); *see generally Geders v. United States,* 425 U.S. 80, 86–87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

Hirokawa's proffer did not include new evidence. Rather, Hirokawa requested surrebuttal to revisit his prior testimony regarding his contacts with Richard "Skinny" Sugita at the state legislature after his co-defendant, Okada, testified during the defense's case-in-chief, and then the government's rebuttal witness confirmed, that Sugita had retired from his post as Sergeant at Arms in 1982 and then passed away in 1995 or 1996, prior to the relevant time periods that Hirokawa claimed to have been working with him. It was not an abuse of discretion for the district court to deny Hirokawa's request to use surrebuttal not to impeach the government's witness, but merely to give additional testimony regarding his contacts at the state legislature—an issue Hirokawa himself raised and had the opportunity to thoroughly address during his case-in-chief. *See United States v. Gaines,* 170 F.3d 72, 83 (1st Cir.1999) (no abuse of discretion in denying surrebuttal evidence that related to an issue "raised prior to the prosecution's rebuttal, by [defendant] in his own case-in-chief" and that would not have impeached the prosecution's rebuttal witness).

■ 3. The district court did not commit reversible plain error in failing to instruct the jury that it could convict on the charge of conspiracy to commit mail fraud only if it found the commission of an overt act within the applicable five-year statute of limitations, 18 U.S.C. § 3282. Under *United States v. Fuchs,* 218 F.3d 957, 962 (9th Cir.2000), the failure to give a statute of limitations instruction in this case was error, and the error was plain. But unlike

in *Fuchs,* appellants here have failed to carry their burden of showing prejudice. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

In *Fuchs,* it was "impossible to discern" from the jury's general verdict on conspiracy whether it found the commission of an overt act within the statute of limitations or whether it convicted solely based on overt acts occurring outside the limitations period. 218 F.3d at 962 n. 1, 963. By contrast, although appellants assert that the jury "might have relied on the time-barred overt acts," they fail to establish that their conspiracy convictions might have been *solely* based on the time-barred overt acts.

Besides convicting defendants Hirokawa, Furukawa, Uemura and Okada on the charge of conspiracy to commit mail fraud, the jury also convicted Hirokawa, Furukawa and Uemura on several counts each of substantive mail fraud based on conduct that also supported the conspiracy charge and occurred within the same five-year limitations period. Taken together, the jury's mail fraud and conspiracy verdicts necessarily establish a finding that "one or more" co-conspirators performed at least one or more timely overt acts, providing a legally adequate basis for the conviction of "each" co-conspirator on the conspiracy charge. 18 U.S.C. § 371; *see also Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942) ("The overt act ... may be that of only a single one of the conspirators and need not be itself a crime."); *United States v. Andreen,* 628 F.2d 1236, 1248 (9th Cir.1980) (the "only function" of proof of an overt act "is to demonstrate that the conspiracy is operative"). The instructional error was therefore harmless. *See United States v. DeGeorge,* 380 F.3d 1203, 1215–16 (9th Cir. 2004) (distinguishing *Fuchs* where defen-

dant's convictions on four counts of perjury, which were not time-barred and could constitute overt acts for purposes of conspiracy, provided a legally adequate basis for his conspiracy conviction).

■ 4. The district court did not commit plain error by omitting a jury instruction on "good faith" as a defense to mail fraud. It is undisputed that the district court gave correct jury instructions on the essential elements of mail fraud and on the definition of "intent to defraud" as "an intent to deceive or cheat." "Inasmuch as good faith is the obverse of intent to defraud, the district court's instruction that the jury had to find that [defendants] acted with a specific intent to defraud can be deemed an instruction on good faith. Thus, there was no 'plain error.'" *United States v. Cusino*, 694 F.2d 185, 188 (9th Cir.1982) (citations omitted); *see also United States v. Shipsey*, 363 F.3d 962, 967 (9th Cir.2004) ("Our case law is well settled that a criminal defendant has 'no right' to *any* good faith instruction when the jury has been adequately instructed with regard to the intent required to be found guilty of the crime charged, notwithstanding the normal rules governing 'theory of defense' requests.").

■ 5. Sufficient evidence supports the jury's finding that appellants caused the use of the United States mails for purposes of their mail fraud convictions. Circumstantial evidence regarding "routine custom and practice can be sufficient to support the inference that something is mailed." *United States v. Green*, 745 F.2d 1205, 1208 (9th Cir.1985). "Direct proof of mailing is not required." *Id.*

In this case, the government presented testimony by the accounting systems manager in the pre-audit branch of the Hawaii Department of Accounting and General Services regarding that agency's procedures for issuing checks to pay vendors and contractors for other state agencies. She testified that under those procedures, checks issued by the department are either routed back to the requesting state agency or mailed to the payee, depending on the how the summary warrant voucher is coded. If the warrant routing indicator is blank, the check is to be mailed and is given to a courier for delivery to the post office. For the checks at issue here, the agency's records showed that for each check that was issued the respective warrant routing indicator was blank and the processing clerk had written a slash through the word "mail," rather than slashing "del" for delivery. Based on these records, the government's witness testified that all the checks were mailed through the United States mail. This evidence was sufficient to enable the jury to find the checks were mailed. *See Green*, 745 F.2d at 1208; *United States v. Miller*, 676 F.2d 359, 362 (9th Cir.1982); *United States v. Brackenridge*, 590 F.2d 810, 811 (9th Cir.1979) (per curiam); *cf. United States v. Lo*, 231 F.3d 471, 476–77 (9th Cir.2000) (holding that "custom and practice evidence alone" was insufficient because of "the absence of any direct evidence of the document's existence," let alone its delivery into the mail system).

■ 6. Sufficient evidence also supports appellant Hirokawa's conviction on Count 30. Even though the district court struck the testimony of the government's expert regarding the estimated value of the work performed on the underlying contract, we reject Hirokawa's assertion that there was insufficient evidence the State of Hawaii was defrauded. The government submitted substantial evidence regarding the nature of the defendants' bid-rigging scheme and that they followed the same modus operandi regarding the contract at issue in Count 30, including Hirokawa's usual Post-it note identifying the contrac-

tor to be called (in this instance, a company owned by co-defendant Uemura) and the contractor's submission of two forged bids along with its own lower bid, which was inevitably accepted. Furthermore, even without an expert's opinion, the jury was independently capable of determining that the contract was fraudulently inflated based on the contract price ($8,860), the jury's own evaluation of the nature of the project and the work performed (the repair of a plate cover of a door closure mechanism), and the deceptive manner in which the contract was obtained.

■ 7. With respect to sentencing, the record belies appellants' contention that the district court failed to make requisite factual findings in determining relevant conduct under U.S.S.G. § 1B1.3 (2006). A district court may satisfy its duty to make specific findings regarding relevant conduct by adopting the factual findings of the presentence report. *United States v. Naranjo,* 52 F.3d 245, 249 (9th Cir.1995). Besides making express findings regarding Furukawa's and Hirokawa's roles in the conspiracy, for purposes of § 1B1.3 specifically the district court overruled each appellant's objections and adopted the respective PSR's factual statements and its findings and calculations as to relevant conduct and amount of loss. Furthermore, each appellant's PSR contained specific factual findings on his reasonably foreseeable conduct and the losses attributable to him. *Cf. United States v. Whitecotton,* 142 F.3d 1194, 1198–99 (9th Cir.1998) (reversing where the district court "did not explicitly adopt any part of the presentence report" and even if it had the PSR's findings would have been insufficient to sustain the sentence).

■ 8. The district court did not clearly err in calculating the amount of loss attributable to each appellant. "The court need only make a reasonable estimate of the loss" based on "available information," and may include in its accounting "[t]he approximate number of victims multiplied by the average loss to each victim," with credit for "the fair market value of . . . the services rendered." U.S.S.G. § 2B1.1 cmt. 3(C), (E)(i); *United States v. Scrivener,* 189 F.3d 944, 949–50 (9th Cir. 1999). That is precisely the method the district court adopted here. Also, given that the contracts reviewed by the government's expert evidenced an overbilling range of 68 to 90 percent, the district court's application of the "much more conservative" 68 percent multiplier to the remaining contracts was not unreasonable.

■ With respect to appellants' more specific objections to the court's loss calculations, we reject their contention that the district court acted unreasonably in adopting the overbilling estimations by Goldblatt, the government's expert, including those for contracts awarded between July 1997 and September 1998. The district court, having presided over the entire trial and hearing all the testimony, was in the best position "to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1 cmt. 3(C). We also reject appellants' assertion that the district court failed to apply an offsetting adjustment for six contracts for which Goldblatt's estimates exceeded the contract prices. Appellants' assertion is unsupported by any citation to the record and is contradicted by Goldblatt's testimony at trial and the PSRs, which indicate that all contracts reviewed by Goldblatt— including the six "underbid" contracts— were accounted for in the district court's total loss calculations.

■ 9. The district court did not commit plain error by including in its restitution orders $689,685 that the Hawaii Department of Transportation paid to re-

imburse the Hawaii Attorney General's Office for investigative costs. Under the Mandatory Victim Restitution Act, the district court was required to order—and as the "victim" of appellants' bid-rigging scheme, the Department of Transportation was entitled to receive—restitution for "expenses incurred during participation in the investigation or prosecution of the offense," 18 U.S.C. § 3663A(b)(4), although not for "the costs of gathering evidence *solely* for a criminal investigation." *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir.2004) (emphasis added).

Appellants' assertion that the investigative costs here exclusively fall into the latter category is unsupported by any evidence in the record. Appellants offer only their observation that the prosecution of criminal matters is among the various duties of the state attorney general. Furthermore, they fail to account for the Department of Transportation's need to investigate the causes and extent of its losses and pursue relief outside the criminal arena, including the agency's civil proceedings against the various participants in the airport bid-rigging scheme. *Cf. id.* (holding that the Environmental Protection Agency could recover site investigation costs that were incurred "to determine what damage the defendant's conduct caused and to design an appropriate cleanup plan"); *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002) (holding that a mother's "attorney's fees, which were incurred in an attempt to regain custody of her children, were a direct and foreseeable result of [the defendant's] improper removal and retention of them"). Thus, although it is their burden to do so, appellants fail to establish any clear or obvious error here. *See*

*Olano*, 507 U.S. at 734, 113 S.Ct. 1770; *Fuchs*, 218 F.3d at 962.

**AFFIRMED.**