USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1883 UNITED STATES OF AMERICA, Appellee, v. LOUIS ANDRADE, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy Gertner, U.S.District Judge] __________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Lynch, Circuit Judges. ______________ ____________________ Daniel J. Johnedis on brief for appellant. __________________ Donald K. Stern, United States Attorney, and Ralph F. Boyd, Jr., _______________ ___________________ Assistant United States Attorney, on brief for appellees. ____________________ August 26, 1996 ____________________ LYNCH, Circuit Judge. Louis Andrade was convicted LYNCH, Circuit Judge. _____________ of possessing cocaine base with intent to distribute. He was sentenced to 168 months in prison. He appeals from both his conviction and his sentence.  Andrade's main argument is that the evidence seized when the car in which he was riding was stopped by officers from the Boston Anti-Gang Violence Unit should have been suppressed. He says that the ostensible reason for the stop, a traffic violation, was only a pretext to search the car in hope of proving more serious charges. For these charges, he says, there then existed no probable cause or reasonable suspicion. His argument is foreclosed by the Supreme Court's decision in Whren v. United States, 116 S. Ct. 1769 (1996), _____ _____________ decided after this case was initially briefed. He also argues that the 14.21 grams of cocaine base with which he was caught was so small an amount that it is unreasonable to infer that he had the needed intent to distribute. This argument is without merit. As for Andrade's challenges to his sentence, his argument based on the distinction in severity of sentences between crack cocaine and powder cocaine is foreclosed. That distinction does not permit a downward departure in sentence. There was no error in the enhancement of his sentence for his attempt to shoot one of the arresting officers. -3- 3 I We recite the facts as the jury could reasonably have found them. Andrade was a passenger in a car which made an ill-considered and illegal U-turn in front of oncoming traffic on Columbia Road in Boston on February 20, 1994. This maneuver was observed at around 8:00 p.m by Officers Byrne and Linskey of the Anti-Gang Violence Unit. Byrne and Linskey were patrolling the area in an unmarked car driven by Officer Freeman of the same unit. The Unit gathers intelligence on gangs, leading to arrests of gang members in the Roxbury, Mattapan, and Dorchester areas of Boston. The Unit uses motor vehicle violations as a tool to investigate gang activities. The officers followed the car, and saw three adults in the vehicle. They also saw that the car had a broken taillight. As the car slowed to a stop in front of a building on Seaver Street, the officers turned on their wig- wag light and then approached the car on foot. Officer Freeman identified himself and asked the driver, Sandra Wright, for her license, while Officer Linskey detained the front seat passenger, Terrell Andrade (Louis Andrade's brother), who had emerged from the car. As Officer Freeman shone a flashlight into the car, he saw, in the center of the front seat, a plastic bag containing an off-white, rock-like substance which looked like crack cocaine. He leaned into -4- 4 the car and picked up the bag and then signalled to the other officers to handcuff Wright and Terrell Andrade.  Officer Freeman then went to open the right rear passenger door, next to where Louis Andrade was sitting. While Officer Freeman spoke to Andrade, he saw that Andrade was sitting stiffly with his left hand behind his back. Andrade ignored Officer Freeman's several commands that he take his hand from behind his back. Drawing their service pistols, Officers Freeman and Byrne yelled at Andrade to remove his hand from behind his back. Andrade pulled his left hand from behind his back and threw out, onto the street, a bag containing a substance which appeared to be crack cocaine. When Officer Freeman then attempted to handcuff Andrade, Andrade lurched backward into the car and tried to reach down to the floor. As Officer Freeman leaned into the car toward Andrade, he suddenly saw a gun in Andrade's hand. He screamed "gun," pushed himself away from Andrade, saw a flash, and heard a noise. Believing Officer Freeman had been shot (he was not), Officer Byrne fired a single shot at Andrade, hitting him in the leg and ending the confrontation. Officer Linskey then pulled Andrade out of the car and asked him where the gun was. Andrade denied having a gun, but Sandra Wright yelled "check his ankles; check his ankles." The officers did so and found the gun, not on Louis -5- 5 Andrade's ankle, but on the floor of the car near to where Andrade had been sitting. A spent cartridge was found jammed in the gun's chamber, indicating that the weapon had been fired, and, fortuitously, that no additional rounds could be fired. An upset Sandra Wright continued to scream "the dude in the back shot at a cop; the dude in the back shot at a cop; I could have gotten shot." Accompanying Louis Andrade on the ride to the hospital, Linskey observed Andrade attempting to remove $260.00, in mostly ten and twenty dollar bills, from his pants pocket. Linskey later found another plastic bag in the same pocket. That bag, like the others, contained cocaine base ("crack"); the two bags connected to Louis Andrade totalled some 14.21 grams in weight. That amount of cocaine is enough for 140 "jums" (doses) or "dime bags." In a four count indictment, Andrade was charged with possession with intent to distribute cocaine base, with unlawful possession by a convicted felon of a firearm and ammunition, with possession of a firearm bearing an obliterated serial number, and with using a firearm during and in relation to a drug trafficking crime. The jury convicted on the drug possession count under 21 U.S.C.  841(a)(1) and deadlocked on the firearms counts. The district court denied subsequent motions for judgment of acquittal and for a new trial. Andrade was sentenced to 168 -6- 6 months in prison and four years supervised release. After sentencing, the court dismissed the firearms counts on the government's motion.  II Andrade makes three attacks on his conviction. He argues that the trial judge erroneously denied his motion to suppress the evidence seized during the "warrantless, pretextual traffic stop of the car in which defendant was a passenger." He also says that the evidence of intent to distribute the drugs was insufficient to support a conviction, and that the thinness of that evidence at least entitles him to a new trial. Although ably briefed, none of these arguments prevails. A. The Suppression Motion _________________________ Andrade filed a motion to suppress the evidence seized during the car stop on the theory that the stop was pretextual. The district court held an evidentiary hearing and determined the stop was not pretextual but was made, as the officers said, to investigate why the car had made a "sharp, harsh U-turn" into oncoming traffic. The court later modified its ruling to note that there was evidence to suggest a second motive for the stop, but that under the objective test of United States v. Miller, 589 F.2d 1117 (1st _____________ ______ Cir. 1978), cert. denied, 440 U.S. 958 (1979), any mixed _____ ______ motive was irrelevant. Our review of the ultimate conclusion -7- 7 as to whether the Fourth Amendment was violated is de novo. __ ____ Ornelas v. United States, 116 S. Ct. 1657, 1662 (1996). _______ _____________ In support of his claim that the motion to suppress should have been granted, Andrade relies on a theory firmly rejected by the Supreme Court in Whren. In Whren, the _____ _____ Supreme Court affirmed the denial of a motion to suppress drugs seized when the police stopped a car for a traffic violation. The Court held that the temporary detention of a motorist upon probable cause to believe the traffic laws have been violated does not transgress the Fourth Amendment's prohibition on unreasonable seizures, even if the officer would not have stopped the motorist absent some additional law enforcement objective. Whren, 116 S. Ct. at 1774. _____ Because the Fourth Amendment allows certain actions to be taken in certain circumstances, regardless of motives, the Court rejected any inquiry into the officers' subjective intent or into what a "reasonable officer" would have done in similar circumstances. Id. at 1775. The Court thus ___ foreclosed any argument that ulterior motives can invalidate an otherwise justified traffic stop. Id. at 1774. ___ Here, the illegal U-turn plainly provided probable cause to stop the car for violating the traffic laws, and Andrade does not argue otherwise. Under Whren, the inquiry _____ -8- 8 stops there, as does Andrade's appeal on this point.1 Id.; __ see also United States v. Abernathy, 83 F.3d 17, 19 (1st Cir. ___ ____ _____________ _________ 1996) (officers on undercover investigatory narcotics detail may lawfully make traffic violation stop). B. Evidence of Intent to Distribute ___________________________________ Andrade's remaining attacks are premised on his contention that the evidence did not show that he had an intent to distribute the cocaine base, even if the evidence were sufficient to show that he did possess it for personal use. He challenges the district court's denial of both his Rule 29 motion for a judgment of acquittal and his Rule 33 motion for a new trial. 1. Motion for Judgment of Acquittal ________________________________ In a sufficiency challenge, we determine whether, drawing all reasonable inferences in favor of the prosecution, a rational jury could find guilt beyond a reasonable doubt. United States v. Luciano-Mosquera, 63 F.3d _____________ ________________  ____________________ 1. In his reply brief, Andrade argues that the potential for discriminatory treatment of members of minority communities requires courts to invalidate pretextual traffic stops. He suggests that circumstantial evidence, particularly Officer Byrne's description of the occupants of the car as "black," indicates that racial animus was at work here. This line of argument was rejected in Whren, where the Supreme Court _____ pointed out that "the constitutional basis for objecting to intentionally discriminatory application of the laws is the Equal Protection Clause, not the Fourth Amendment." Whren, _____ 116 S. Ct. at 1774. In any event, we need not pursue this issue further; it was not raised in Andrade's principal brief to this court and is therefore waived. See United States v. ___ ______________ Edgar, 82 F.3d 499, 510 (1st Cir.), petition for cert. filed, _____ ________________________ 65 U.S.L.W. 3110 (U.S. July 16, 1996)(No. 96-5082). -9- 9 1142, 1149(1st Cir. 1995), cert. denied, 116 S. Ct. 1879 ____________ (1996). It would, of course, be unusual for there to be direct evidence of a defendant's intent to distribute the drugs in his possession where the defendant is not observed dealing drugs but instead is merely found with the drugs. As a result, juries, and courts, have to decide what inferences may be reasonably drawn from the available circumstantial evidence. See United States v. Echeverri, 982 F.2d 675, 678 ___ _____________ _________ (1st Cir. 1993). That evidence may include information about the amounts and types of the drugs possessed and about the accompanying accoutrements, such as the sums of money also found, whether there is drug weighing, cutting, and packaging paraphernalia, whether a weapon is used, and the like. See, ___ e.g., id. at 678-79 (considering layout of defendant's ____ ___ apartment, amount of cocaine found, and the presence of a scale and a ledger as corroborative of intent). To support his insufficiency argument, Andrade relies upon United States v. Valerio, 48 F.3d 58 (1st Cir. _____________ _______ 1995). There, this court vacated a conviction for possession of powder cocaine with intent to distribute because the evidence was insufficient to prove that the defendant knew about the large quantities of cocaine which were hidden in an apartment in which she was a short-term guest. Id. at 64. ___ The court found that the defendant could only have been found -10- 10 to be aware of 14.83 grams of cocaine hidden in her baby's shoe; this was "not large enough" a quantity to support an inference of distributive intent. Id.2 ___ This is a different case and we have no trouble affirming the jury verdict. To start, this case involves not cocaine powder, but cocaine base or "crack." The cases on which Andrade relies involve powder cocaine (cocaine hydrochloride), not crack cocaine (cocaine base) which is more potent and is sold in much smaller doses. The legislative history of the federal drug laws repeatedly indicates that crack's greater potency is a primary reason that offenses involving crack receive higher penalties than do those involving similar amounts of powder cocaine. See, ___ e.g., United States v. Buckner, 894 F.2d 975, 978-80 (8th ____ ______________ _______ Cir. 1990)(compiling statements of members of Congress and hearing testimony of drug abuse experts). For example, when  ____________________ 2. Andrade also draws our attention to United States v. _____________ Martinez, 44 F.3d 148 (2d Cir. 1995), in which a panel of the ________ Second Circuit (over Judge Walker's dissent) initially found the evidence of intent to distribute insufficient where the defendant possessed 3.5 grams of powder cocaine, as well as one-half ounce of "cut," a one gram scale, and a gun. Id. at ___ 151. However, the panel later reconsidered its disposition of the case and decided to affirm Martinez's conviction because "any amount of drugs, however small, will support a conviction when there is additional evidence of intent to distribute." See Martinez v. United States, 54 F.3d 1040, ___ ________ ______________ 1043 (2d Cir.), cert. denied, 116 S. Ct. 545 (1995). The ____________ "cut," the scale, and particularly the firearm, which "by itself provided strong evidence of intent to distribute," supported the inference that the defendant was engaged in drug trafficking. Id.  ___ -11- 11 Congress disapproved proposed Sentencing Guidelines amendments that would have equalized the penalties for offenses involving crack and powder cocaine, the House Report noted the "unique nature of the crack cocaine trade, which often entails trafficking in much smaller quantities than with powder cocaine." H.R. Rep. No. 272, 104th Cong., 1st Sess. 3 (1995). Thus, whether or not 14.21 grams is a  "small" amount of powder cocaine, it is not a small amount of crack cocaine.  Nor was unadorned evidence of amount all that the jury had to go on. The government's expert witness, Sgt. Kevin Buckley, who had been involved in more than 1000 drug investigations, testified that the amount of crack cocaine Andrade possessed could make more than 140 "jums," with a street value of at least $1400; that he had never seen a mere user with more than 8-10 "jums" at a time; that mere users typically use all of their cash to feed their habit; that a mere user usually smokes all of the crack he can obtain right away; and that, in Boston, crack is usually sold in $10 and $20 bags. Also, Andrade had no implements with him to smoke the crack. This was enough, even without consideration of the presence of the firearm. The jury had ample evidence from which to draw the inference of intent to distribute. Cf. United States v. Bergodere, 40 F.3d 512, 518 (1st Cir. ___ _____________ _________ 1994)(affirming intent finding where total value of heroin -12- 12 seized was $1500 and gun and drug packaging materials were found), cert. denied, 115 S. Ct. 1439 (1995). The inferences ____________ drawn by the jury were thus proper and reasonable, and we affirm the district court's denial of Andrade's Rule 29 motion. 2. Motion for a New Trial _________________________ Andrade asks that, even if we find the evidence sufficient to sustain the jury verdict, we grant him a new trial in the interest of justice. See Fed. R. Crim. P. 33.3  ___ However, "the decision to grant or deny a new trial is committed to the sound discretion of the district court." United States v. Soto-Alvarez, 958 F.2d 473, 479 (1st Cir.), _____________ ____________ cert. denied, 506 U.S. 877 (1992). Thus, we will affirm the ____________ district court's denial of a new trial unless there has been a "manifest abuse of discretion." United States v. Tibolt, _____________ ______ 72 F.3d 965, 972 (1st Cir. 1995), cert. denied, 116 S. Ct. ____________ 2554 (1996); see also 3 Charles A. Wright, Federal Practice & ________ __________________ Procedure: Criminal 559 (2d ed. 1982)(appellate court ___________________  ____________________ 3. The government argues that Andrade's motion for a new trial was untimely, and that the court thus lacks jurisdiction to consider it. However, on December 22, 1994, just two days after the guilty verdict, defendant's counsel filed a motion for leave to file a Rule 33 motion at a later date; the district judge allowed that motion. Rule 33 expressly permits the court to extend the time limit for filing a motion. Motions shall be made "within 7 days after verdict or finding of guilty or within such further time as ____________________________ the court may fix during the 7-day period." Fed. R. Crim. P. _________________ 33 (emphasis added). Andrade's Rule 33 motion was thus timely, and we reach the merits of this claim. -13- 13 "properly defers" to trial court on motion for a new trial). The remedy of a new trial is rarely used; it is warranted "only where there would be a miscarriage of justice" or "where the evidence preponderates heavily against the verdict." United States v. Indelicato, 611 F.2d 376, 386 _____________ __________ (1st Cir. 1979)(internal quotations omitted). Andrade does not present any new evidence or point to any grave errors by the trial judge, but merely reiterates his claim that the evidence of intent was thin. As we find that the evidence in the record fully supported the jury's verdict, neither of the necessary conditions for a new trial is satisfied. Accordingly, the district court did not abuse its discretion when it denied Andrade's Rule 33 motion.  III Andrade's appeals from his sentence are also without merit. Andrade's first claim is that because there is a disparity between the punishments for crack and powder cocaine, the trial judge erred in not departing downward to the comparable base offense level for powder cocaine. He argues that the recent report of the Sentencing Commission, which recommended a modification of this disparity, demonstrates that there are factors not adequately considered by the current Guidelines. See U.S.S.G 5K2.0, p.s. The ___ district court agreed with Andrade that the disparity was -14- 14 "unfair" and that, in the right circumstances, a departure based on the Commission findings would be justified. Here, however, the district judge found that were she to depart downward, Andrade's extensive criminal record would then require a substantial compensatory upward departure. Accordingly, the court set Andrade's base offense level at 26, the required level under the Guidelines for cases involving between five and twenty grams of cocaine base. See ___ U.S.S.G. 2D1.1(c)(7). The district court thus rejected Andrade's request for a departure on a discretionary, not a legal, basis. While in other circumstances, this court lacks jurisdiction to review the discretionary decisions of the sentencing judge, United States v. Sanchez, 81 F.3d 9, 10 (1st Cir.), _____________ _______ petition for cert. filed (U.S. July 8, 1996)(No. 96-5082), we ________________________ would reject Andrade's appeal here regardless. As we have held, the Sentencing Commission's findings with regard to the sentence disparity between crack and powder cocaine are "not a ground for departure under 5K2.0." Id. at 11; see also ___ ___ ____ United States v. Camilo, 71 F.3d 984, 990 (1st Cir. _______________ ______ 1995)(noting congressional rejection of Guidelines amendments that would have eliminated disparity), cert. denied, 116 S. _____________ Ct. 1555 (1996).4 The district court thus had no discretion  ____________________ 4. Andrade emphasizes that Congress, when rejecting the proposed equalization of crack and powder cocaine penalties, invited the Sentencing Commission to come up with an -15- 15 to depart downward based on the sentencing distinction between crack and powder cocaine. This court has also held the distinction to be constitutional. United States v. _____________ Singleterry, 29 F.3d 733, 739-41 (1st Cir.), cert. denied, ___________ _____ ______ 115 S. Ct. 647 (1994).  Andrade also attacks the district court's decision to increase his sentence by three levels for his aggravated assault on a police officer. See U.S.S.G. 3A1.2(b). ___ Andrade contends that the presentence report finding that Andrade "retrieved a gun, which he had earlier attempted to conceal . . . and discharged it in the direction of Officer Freeman" was unreliable and unsupported by trial evidence. Andrade argues that the district judge erred in relying on that report and on unreliable trial evidence. In a sentencing appeal, we review the district court's findings of fact for clear error, giving due regard to the district court's credibility judgments. 18 U.S.C. 3742(e). Here, the district judge's finding that Andrade assaulted Officer Freeman was clearly based on her own assessment of the evidence presented at trial. Her findings on this point were explicit:  ____________________ alternative proposal. However, as has been observed, "a direction to study a matter, even from Congress, cannot be said to change the state of the law (here, the legal fact that the Commission has considered the 'circumstance'-- the difference between crack and powder cocaine)." United States _____________ v. Anderson, 82 F.3d 436, 440 (D.C. Cir. 1996). ________ -16- 16 I saw the testimony, I saw the witnesses. I heard what Officer Freeman said. I listened to him with 25 years of experience behind me. And I believe him. Andrade points to nothing in the record that renders these findings clearly erroneous. As the evidence, including Wright's exclamation that "that dude shot at a cop," supports a finding of aggravated assault on an officer, we affirm the three-level enhancement. Andrade's conviction and sentence are affirmed.   -17- 17