**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James A. BERGER, Jr., Defendant–Appellant.**

**No. 95–50564.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1996.

Decided Dec. 13, 1996.

Gretchen Fusilier, Carlsbad, California, for defendant-appellant.

Miriam A. Krinsky, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: PREGERSON, BOOCHEVER, and REINHARDT, Circuit Judges.

BOOCHEVER, Circuit Judge:

James A. Berger, Jr. was resentenced on remand from this court, for three narcotics counts and one count of using a firearm during a drug trafficking crime. He claims the resentencing court erroneously believed it did not have the discretion to depart downward on two grounds: that his career offender classification overrepresented his criminal history, and that the sentencing guidelines for cocaine base are disproportionately harsh in comparison to those for powder cocaine. We affirm the decision not to depart downward, and we remand for vacation of a 60–month enhancement for use of a firearm.

## FACTS

Jeffrey Moore made four trips to Los Angeles to pick up cocaine base from James A. Berger, Jr. The cocaine base was to be sold in Albuquerque, New Mexico. Moore conveyed the drug sale proceeds to Berger either personally or through a third person.

On a trip to Los Angeles in November 1992, Moore picked up 273 grams of cocaine base from Berger, to be sold in Albuquerque. A Drug Enforcement Administration ("DEA") officer stopped Moore at the airport on the morning of November 18, patted him down, and found the drugs, along with a scrap of paper with Berger's address and phone number.

Also on November 18, 1992, the DEA agent, with other agents and Los Angeles Police Department ("LAPD") officers, went to Berger's apartment. Berger gave them oral and written permission to search. In Berger's bedroom, the officer found drug paraphernalia, including a scale and three beakers with cocaine base residue, and numerous plastic baggies. The DEA agents also found three firearms, two of which were loaded. Two guns were located under the bed and one, loaded, was in the dresser drawer with extra ammunition. Telephone records showed numerous calls to Albuquerque, including Moore's number. The officers did not arrest Berger.

Five months later, on April 26, 1993, DEA agents and LAPD officers went to Berger's new apartment with an arrest warrant. Again, Berger consented to a search of the apartment, and the agents found a loaded shotgun and ammunition under a staircase next to the kitchen. In the kitchen, Berger directed the agents to a cabinet with 16.4 grams of cocaine base. Berger also directed the officers to $2800 in small bills, on which a narcotics detection dog alerted to the scent of narcotics.

Berger was indicted in August 1993 on one count of conspiracy to distribute and one count of distribution of cocaine base, both in violation of 21 U.S.C. § 841(a)(1); two counts of possession with intent to distribute cocaine base, also in violation of 21 U.S.C. § 841(a)(1); and two counts of using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). A jury convicted Berger on all counts.

The government had filed an information alleging that Berger had two prior felony convictions under 21 U.S.C. § 841(b)(1)(A), which provides for enhanced penalties for a narcotics defendant with one or more prior felony narcotics convictions. Berger denied that he had been convicted of the second felony, and the judge dismissed that allegation. On January 4, 1994, Berger was sentenced to four concurrent life sentences on the drug counts, with consecutive 60–month and 240–month sentences on the gun counts. The judge also sentenced Berger to periods of supervised release.

Berger appealed, and this court affirmed except for one of the firearms convictions. The court held that as the government acknowledged, the second firearms conviction should be vacated because the language of the indictment was so vague that both arms convictions could have been premised on the same drug offenses. The court also held that the district court had mistakenly believed that Berger still had two prior felony narcotics convictions, resulting in a longer sentence than required. The case was remanded for resentencing.

The district court resentenced Berger to concurrent 360–month sentences on the narcotics charges, with a consecutive 60–month sentence on the remaining gun count. The sentence also included periods of supervised release.

Berger appeals his resentencing.

## DISCUSSION

I. *Discretion to depart downward at resentencing*

 This court lacks jurisdiction to review a district court's discretionary refusal to depart downward when sentencing a defendant under the Sentencing Guidelines. *United States v. Monroe*, 943 F.2d 1007, 1017 n. 10 (9th Cir.1991). This court may review the district court's decision not to depart downward, however, if the district court erroneously believed that it lacked the power to depart. *Id.*

A. *Career offender status*

At resentencing in this case, Berger's counsel argued that the court had the discretion to depart downward because Berger's prior criminal activity was overrepresented when he was classified as a career offender. Counsel cited *United States v. Lawrence*, 916 F.2d 553 (9th Cir.1990), which held that the sentencing court did have the discretion to depart downward if the career offender classification overrepresented the defendant's past crimes and the likelihood of future crimes. *Id.* at 554–55.

After Berger's counsel argued for a downward departure on this and other grounds,

the district court sentenced Berger without a downward departure. The government then asked:

GOVERNMENT: Another question, your Honor. I would ask if the court's deny—I would ask the court to really rule officially on the motion for downward departure, and if the court is going to—

COURT: I deny that.

GOVERNMENT: Is it a discretionary—

COURT: Yes, I deny that. That will be the order.

[GER p. 341]

Berger argues that this statement is "unclear," and that the decision not to depart downward is thus reviewable. At the least, he contends this court should remand to determine whether the court exercised its discretion or thought it did not have the discretion to depart downward.

■ "Because a sentencing court is not obligated to state its reasons for imposing a sentence within the guideline range, ... the court's silence regarding whether it had authority to depart is not sufficient indication that it believed that it lacked discretion to depart." *United States v. Brown,* 985 F.2d 478, 480 (9th Cir.1993).

[W]hen sentence [is] imposed without the court's stating in so many words, 'I recognize that I have authority to depart, but I decline to do so in the exercise of discretion'.. [and t]he court simply render[s] judgment, in the face of [the defendant's] request for departure, without comment ... we will assume that the district court knows and applies the law correctly, realizes that it does have authority to depart, but concludes that it would be inappropriate to do so on the facts of the particular case.

*United States v. Garcia–Garcia,* 927 F.2d 489, 491 (9th Cir.1991).

■ In this case, the district court did more than remain silent. In an apparent effort to clarify that the court was exercising its discretion, the government explicitly asked whether the denial was discretionary, and the court answered yes. "[D]ecisions to deny downward departure will be considered discretionary unless the district court indicates that its refusal to depart rests on its view that it could not as a matter of law do so." *United States v. Pinto,* 48 F.3d 384, 389 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995). On this record, the district court indicated that it exercised its discretion in not departing downward. We therefore lack jurisdiction to review the failure to depart on this ground.

B. *Cocaine base vs. powder*

Berger's counsel also argued that the disparity in sentencing for base cocaine and powder cocaine—in which the former substance carries much harsher sentences than the latter—justified a discretionary reduction of Berger's sentence:

[I]nasmuch as this court has the discretion to make a downward departure if in fact this court finds that Mr. Berger falls into the category of a career offender, we would make the argument that based on the disparities of the narcotic sentence, as the penalties are reflected in the sentencing guidelines, to also depart from that to bring the sentence into parity with other cocaine offenses.

[GER pp. 331–32] Berger's counsel argued that the statutes specifying the different penalties for cocaine and cocaine base offenses are ambiguous, because the two drugs are chemically the same substance. Therefore, the rule of lenity requires that the harsher penalties for cocaine base be disregarded. [ER pp. 332, 347–49]

The district court responded "the law is in such a state of flux on the question of the disparity in treatment as between the powder and crack [base] cocaine that I will take no position at this time." [GER p. 338]

This circuit has rejected Berger's argument that the statute is ambiguous. In *United States v. Jackson,* 84 F.3d 1154 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 445, 136 L.Ed.2d 341 (1996), the defendant presented expert testimony that "cocaine" necessarily contains "cocaine base," making the penalty provisions ambiguous. Relying on *United States v. Davis,* 864 F.Supp. 1303 (N.D.Ga.1994), the defendant urged the court of appeals to apply the rule of lenity and

sentence the defendant under the penalties for "cocaine" rather than "cocaine base." This court rejected *Davis*, declining to apply the rule of lenity because "Section 841(b) draws a sufficient legal distinction between 'cocaine' and 'cocaine base.'" *Jackson*, 84 F.3d at 1160–61. Other circuits that have ruled on this issue have rejected Davis. *See, e.g., United States v. Canales*, 91 F.3d 363, 367–68 (2d Cir.1996); *United States v. Flanagan*, 87 F.3d 121, 123–24 (5th Cir.1996); *United States v. Smith*, 73 F.3d 1414, 1417–18 (6th Cir.1996); *United States v. Booker*, 70 F.3d 488, 489–91 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1334, 134 L.Ed.2d 484 (1996); *United States v. Jackson*, 64 F.3d 1213, 1219–20 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Fisher*, 58 F.3d 96, 98–100 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 329, 133 L.Ed.2d 229 (1995).

Courts also have held that a district court cannot depart downward based on the sentencing disparity between base and powder cocaine. *See, e.g., United States v. Fonts*, 95 F.3d 372, 374 (5th Cir.1996) (per curiam); *United States v. Andrade*, 94 F.3d 9, 14–15 (1st Cir.1996); *Canales*, 91 F.3d at 369; *United States v. Ambers*, 85 F.3d 173, 177 (4th Cir.1996); *United States v. Anderson*, 82 F.3d 436, 438–42 (D.C.Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996); *Booker*, 73 F.3d at 706; *United States v. Higgs*, 72 F.3d 69, 70 (8th Cir.1995); *United States v. Alton*, 60 F.3d 1065, 1071 (3d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 576, 133 L.Ed.2d 500 (1995).

▇ The widely disparate penalties for cocaine and cocaine base may be unfair. *See Andrade*, 94 F.3d at 14; *United States v. Dumas*, 64 F.3d 1427, 1432 (9th Cir.1995) (Boochever, J., concurring), *cert. denied*, —— U.S. ——, 116 S.Ct. 1341, 134 L.Ed.2d 490 (1996). Courts of appeal nevertheless have held that district courts have no legal author-

ity to depart downward for that reason, "reject[ing] the notion that a district court may override the express intention of Congress regarding penalties for crack cocaine and powder cocaine." *Fonts*, 95 F.3d at 374. Consistent with our holding in *Jackson* that the statute is not ambiguous, we now join those circuits that have held that a district court has no discretion to depart downward based on the powder/base sentencing disparity. "[I]t is not the province of this Court to second-guess Congress's chosen penalty. That is a discretionary legislative judgment for Congress and the Sentencing Commission to make." *United States v. Cherry*, 50 F.3d 338, 344 (5th Cir.1995).[1]

## II. *Disparate impact on African–Americans*

In his brief on appeal, Berger asserts that this court must

> consider whether there exists a Government policy that unconstitutionally targets Blacks for the more severe crack prosecutions while volitionally deciding not to file against Whites in federal court for crack offenses. In order to safeguard appellant's rights, this Court should require the Government to present statistics along with its policy criteria in deciding who it prosecutes in federal court on crack cases.

[Blue Br. p. 14] At the sentencing hearing, Berger's counsel raised the similar issue of "whether or not there is racial discrimination as far as what is now statistically shown to be a high racial disparity in the prosecution for blacks for crack cocaine and whites for the powder cocaine which usually are referred to the state courts for prosecution." [GER p. 334] Berger did not specifically ask for discovery.

Even if Berger had specifically requested discovery on the selective prosecution issue, he would have been required by the Supreme Court's decision in *United States v. Arm-*

---

1. Appellant does not challenge, and we do not address, the validity of the disparity under the Equal Protection Clause. Accordingly, we express no view in our opinion regarding the study recently published in the Journal of the American Medical Association questioning some of the premises on which that disparity is based, Doro- thy K. Hatsukami & Marian W. Fischman, *Crack Cocaine and Cocaine Hydrochloride: Are the Differences Myth or Reality?*, 276 JAMA 1531, 1580 (1996), or the impact of that study on our cases upholding the sentencing structure. *See Jackson*, 84 F.3d at 1161.

*strong,* —— U.S. ——, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) to provide credible evidence that similarly situated persons of other races could have been prosecuted but were not. *Id.* at ——, 116 S.Ct. at 1489. Berger has neither made the appropriate request nor produced any such threshold evidence.

## III. *Berger's firearm conviction*

Berger's final argument is that his remaining conviction for use of a gun during and in relation to drug trafficking should be vacated, because he did not "use" the weapon under 18 U.S.C. § 924(c)(1). *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995), held that "a conviction for 'use' of a firearm under § 924(c)(1) requires more than a showing of mere possession . . . the Government must show active employment of the firearm."

The government concedes that under *Bailey* there is insufficient evidence to sustain Berger's conviction on count four of the indictment, as the evidence does not support more than that Berger "merely store[d] a weapon near drugs or drug proceeds." *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. The firearms sentence therefore must be vacated.[2]

## CONCLUSION

We affirm the district court's sentence on the narcotics charges, and remand for vacation of the consecutive 60–month firearms sentence.

2. On appeal the government initially requested that we vacate and remand to the district court for application of a two-level gun enhancement pursuant to U.S.S.G. § 2D1.1(B)(1). At oral argument, however, the government informed the court that it would not seek such an enhancement on remand, and we accepted that representation. Accordingly, we remand to the district court for the sole purpose of vacating the 60–month sentence.

