UNITED STATES of America, Plaintiff–Appellee,

v.

Daniel WHITECOTTON, Defendant–Appellant.

No. 97–30108.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1997.

Decided April 29, 1998.

Michael Klinkhammer, Klinkhammer Law Offices, Missoula, MT, for defendant-appellant.

Lori A. Harper, Assistant United States Attorney, Great Falls, MT, for plaintiff-appellee.

Before: REAVLEY,[*] BOOCHEVER, and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

Daniel Whitecotton appeals from his conviction for conspiracy and possession with intent to distribute methamphetamine and cocaine, contending that the district court erred at sentencing. His claims of insufficient evidence and a variety of other trial errors are addressed in a separate memorandum disposition.

## FACTS

Montana Narcotics Investigation Bureau Agent Ken Poteet was working on an unrelated case in Great Falls, Montana, when a confidential informant ("CI") named John Maddox told Agent Poteet he could introduce him to someone from whom he could buy drugs. On April 17, 1996, Agent Poteet drove with CI Maddox, who was wearing a recording device (a "wire"), to the house where Daniel Whitecotton was staying with a roommate named Mary Jo. Whitecotton, Agent Poteet and CI Maddox went into the kitchen, and began to discuss the purchase of cocaine. Agent Poteet told Whitecotton he wanted one gram of cocaine and one gram of methamphetamine. Whitecotton told Agent Poteet he could get him cocaine, but the methamphetamine supplier was at work. Whitecotton left to get the drugs, and Agent Poteet and CI Maddox also left.

When they returned, Whitecotton was there, with a small baggie he said contained one and one-half grams of methamphetamine. (The amount actually introduced as evidence was .73 grams.) Whitecotton told them no cocaine was available. Whitecotton told them it would be $130 for the drug and asked them if they wanted more. When Agent Poteet and CI Maddox said yes, Whitecotton said he could get them a half ounce for seven to nine hundred dollars.

Agent Poteet testified at trial that the next day, April 18, Whitecotton told him over the telephone that Agent Poteet would have to give Whitecotton $750 in advance. When Agent Poteet refused and hung up, Whitecotton called back to say that he could come over and bring the money. Agent Poteet and CI Maddox returned to Whitecotton's residence. They parked in the alleyway behind the house and Whitecotton came out to talk to them. Matthew Lineberry arrived and entered the house, and CI Maddox and Whitecotton went inside to talk to him. CI Maddox came back out and asked Agent Poteet for the drug money, assuring Agent Poteet that he had seen the drugs. CI Maddox took the money inside and emerged with 10.09 grams of methamphetamine.

Lineberry testified that within about a month after April 18 he sold larger amounts of methamphetamine and cocaine to Agent Poteet on four different occasions, totalling over 150 grams of methamphetamine and over 44 grams of cocaine. Although Whitecotton was not present at these later sales, Lineberry testified that he would not have sold drugs to Agent Poteet if his close friend Whitecotton had not introduced the two men. Agent Poteet also eventually seized substantial amounts of methamphetamine, cocaine, and marijuana from Lineberry's residence.

Whitecotton was charged in an indictment filed June 21, 1996, with one count of conspiring to distribute methamphetamine and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of possession of methamphetamine and cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Agent Poteet and Lineberry (who had pled guilty) testified for the government at Whitecotton's two-day trial. A jury found Whitecotton guilty after deliberating for a little more than an hour. The district court sentenced him to 120 months imprisonment and eight years supervised release.

[*] Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

## I. *Amount of drugs*

Whitecotton argues that he should have been sentenced only on the basis of the amount of drugs purchased by Agent Poteet on April 17 and 18, which was 10.82 grams of methamphetamine. If this quantity had been used, Whitecotton's guideline range would have been as low as 9 to 15 months. Instead, the prosecution's calculation included the total amount of drugs sold by Lineberry to Agent Poteet, adding the much larger amounts Lineberry testified that he sold to Agent Poteet on four occasions within a month after Whitecotton's introduction of Lineberry and Agent Poteet. The prosecution even added the methamphetamine, cocaine, and marijuana seized from Lineberry's residence, even though those drugs had never been part of any transaction with Agent Poteet, and marijuana was not even mentioned in the two counts of the indictment naming Whitecotton.

Because the district court used the prosecution's calculation of the drug amount in determining Whitecotton's sentence, Whitecotton received the mandatory minimum sentence of ten years. *See* 21 U.S.C. 841(b)(1)(A)(viii) (defendant convicted of violation involving 100 grams or more of methamphetamine must be sentenced to no less than ten years).

■ We review the factual findings of the district court at the sentencing phase for clear error, and the quantity of drugs involved must be supported by a preponderance of the evidence. *United States v. Asagba,* 77 F.3d 324, 325 (9th Cir.1996).

■ To establish the base offense level for conspiracy to possess drugs, the sentencing court must determine the quantity of drugs involved in the commission of the crime. The court derives the quantity of drugs by considering the defendant's "relevant conduct," which includes all acts committed by the defendant. U.S.S.G. § 1B1.3(a)(1)(A). In this case, Whitecotton directly possessed and caused the distribution of 10.82 grams of methamphetamine, the drugs he obtained for sale to Agent Poteet on two occasions in April 1996.

Relevant conduct under the Guidelines also includes the conduct of others that occurs as part of a "jointly undertaken criminal activity," as long as the conduct consists of "reasonably foreseeable acts and omissions of others in furtherance of [that] jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). When the amount of drugs is in issue, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n.2); *see United States v. Newland,* 116 F.3d 400, 403–04 (9th Cir. 1997). When the defendant is convicted of conspiracy,

the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (*i.e.,* the scope of the specific conduct and objectives embraced by the defendant's agreement). The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

　·　　·　　·　　·　　·

■ With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of con-

traband that were within the scope of the criminal activity that he jointly undertook. U.S.S.G. § 1B1.3, comment. (n.2). "In other words, under the Sentencing Guidelines, each conspirator is to be judged on the basis of the quantity of drugs which he reasonably foresaw or which fell within 'the scope' of his particular agreement with the conspirators, rather than on the distribution made by the entire conspiracy." *United States v. Gutierrez–Hernandez,* 94 F.3d 582, 585 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997).

 The district court must make an express factual finding regarding the amount of drugs that the defendant reasonably foresaw as being part of the conspiracy, or that was within the scope of the agreement that the defendant entered. *Id.* at 585; *see United States v. Petty,* 992 F.2d 887, 890 (9th Cir.1993). "The law of this circuit is that under the statutory minimum provisions, the court must assess a defendant's individual level of responsibility for the amount of drugs involved in an offense by determining, in accord with the Guidelines, the amount that the defendant could reasonably foresee would be involved in the offense of which he was guilty." *United States v. Nunez–Carreon,* 47 F.3d 995, 998–99 (9th Cir.) *cert. denied,* 515 U.S. 1126, 115 S.Ct. 2287, 132 L.Ed.2d 289 (1995) (quotations omitted).

 In this case, Whitecotton's counsel argued at the sentencing hearing that Whitecotton was merely introducing Poteet, who he thought was a casual user, to Lineberry, and had entered into no agreement beyond the April 18 transaction. (Lineberry testified that he did not supply Whitecotton with the drugs involved in the transaction of the day before, April 17.) The government argued that it was reasonably foreseeable that Lineberry, Whitecotton's supplier for the single sale on April 18, would later sell larger amounts to Agent Poteet, because Lineberry would not have sold to Agent Poteet without Whitecotton's introduction. That does not support a finding of reasonable foreseeability that one small sale would be followed by a series of much larger ones as a result of jointly undertaken criminal activity.

 Yet the district court did not address the government's argument regarding foreseeability, and did not make a specific finding on the quantity issue. Although a district court may satisfy the requirement that it make factual findings by specifically adopting the findings of the presentence report, *United States v. Naranjo,* 52 F.3d 245, 249 (9th Cir.1995), in this case the district court did not explicitly adopt any part of the presentence report. And even if it had adopted the report, there is nothing in the report to explain why Whitecotton would reasonably have foreseen that after he introduced Agent Poteet to Lineberry and Lineberry sold Poteet a small amount of drugs, Lineberry would continue to sell much larger amounts to the agent on four subsequent occasions. Nor does the presentence report contain any factual explanation why Whitecotton, in furtherance of jointly undertaken criminal activity, would reasonably have foreseen that Lineberry had substantial amounts of methamphetamine, cocaine, and even marijuana (which Whitecotton never mentioned to Agent Poteet) stored in his residence. The adoption of the PSR thus would not have cured the failure to make factual findings, as the PSR itself contained no specific findings on reasonable foreseeability.

This court faced a similar situation in *United States v. Navarro,* 979 F.2d 786 (9th Cir.1992). The district court based the defendant's sentence for conspiracy to distribute drugs on the PSR, which based its sentencing recommendation on the entire amount of drugs involved in five transactions, although the defendant was present only at the first. This court vacated and remanded, because

> [b]efore sentencing, the court should have determined the amount of drugs involved in the conspiracy attributable to Navarro. .... The court may adopt the factual findings of the presentence report [but also must] make express findings that [the defendant] had been accountable for each transaction that affected the determination of his sentence [where the] presentence report had not provided facts demonstrating his involvement in the other transactions.

*Id.* at 788–89. Because the district court did not make the required factual findings, and the presentence report provided no rationale for attributing the entire amount of drugs to Navarro, this court required the district court on remand to make express findings regarding the defendant's culpability for each transaction under § 1B1.3. *Id.* at 789–90.

■ Reasonable foreseeability was necessary but not sufficient to furnish a predicate for the sales after April 18. The Guidelines require that the reasonably foreseeable acts of others be "in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The commentary says explicitly that the acts must be "both" "in furtherance of the jointly undertaken criminal activity," and "reasonably foreseeable." *Id.*, comment. (n.2). The commentary also establishes that "the scope of the criminal activity jointly undertaken by the defendant (the 'jointly undertaken criminal activity') is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." *Id. See, e.g., United States v. Melton,* 131 F.3d 1400, 1405 (10th Cir.1997) (reasonable foreseeability "is not by itself sufficient to establish liability for the acts of coconspirators.... [S]uch acts also must be in furtherance of 'jointly undertaken criminal activity'") (quotations omitted); *United States v. McDuffy,* 90 F.3d 233, 236 (7th Cir.1996) (reasonable foreseeability not enough; "[A] defendant does not become liable in sentencing for the acts of coconspirators if those acts did not advance an objective within the scope of the conspiracy that he joined."); *United States v. Childress,* 58 F.3d 693, 723 (D.C.Cir.1995) (reasonable foreseeability and jointly undertaken are separate requirements), *cert. denied,* 516 U.S. 1098, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996).

The indictment and conviction did not establish which sales were related to Whitecotton's jointly undertaken criminal activity. The PSR initially said nothing to tie Whitecotton to any sales other than those adding up to 10.82 grams. In response to a defense objection that the subsequent, larger sales were not relevant conduct for purposes of Whitecotton's sentence, the probation officer

noted simply that Whitecotton "introduced these individuals [the undercover agents and confidential informants] to co-defendant Matthew Lineberry."

The evidence at trial was that Lineberry and Whitecotton were best friends and former roommates, so when Whitecotton introduced the men, Lineberry felt trust and confidence. But the evidence was that Whitecotton was not paid any profit from the subsequent sales, he had no contact with the drugs or the money in those sales, and there had been no previous history of Whitecotton introducing drug customers to Lineberry. That the drug sales would not have occurred but for Whitecotton's introduction is insufficient to establish that the subsequent sales were "in furtherance of the jointly undertaken criminal activity" of Whitecotton and Lineberry. Without a share of the money, knowledge, presence, acts in participation, or anything else but a historical social connection, there was no basis for concluding that the subsequent sales by Lineberry were "jointly undertaken" by Whitecotton.

We conclude that Whitecotton should not have been sentenced for the full amount of drugs without evidence that the later sales were "jointly undertaken criminal activity."

## II. *Refusal to depart downward*

■ Whitecotton also appeals the district court's refusal to depart downward on the basis of entrapment and diminished capacity.

The district court's attribution of the entire amount of drugs to Whitecotton meant that instead of receiving a sentence within a Guideline range as low as 9–15 months, he was subject to a mandatory minimum sentence of ten years. Because the amount of drugs considered "relevant conduct" triggered the imposition of the lengthy ten-year statutory minimum, the need for careful and specific findings is especially obvious. As this court indicated in *Nunez–Carreon,* "[i]t may be, and we need not decide, that a less mechanical and more individual determination of foreseeability is needed for a statutory minimum. Unlike the Guidelines sentencing, the judge cannot depart downward because of a mitigating circumstance...."

47 F.3d at 999 (quotations and citations omitted).

 That is exactly what happened in this case. Feeling constrained by the mandatory minimum sentence of ten years,[1] the district court indicated that it did not have the discretion to depart downward because "this is a mandatory minimum sentence of 10 years that has to be imposed here. So I really don't, under these Guideline ranges, have any discretion in this case." Because "the district court indicate[d] that its refusal to depart rests on its view that it could not as a matter of law do so," we have jurisdiction to review the decision not to depart. *United States v. Berger*, 103 F.3d 67, 70 (9th Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1456, 137 L.Ed.2d 560 (1997).

The district court clearly believed that it did not have the discretion to reduce Whitecotton's sentence below ten years. On remand, because Whitecotton will be sentenced on the basis of 10.82 grams of methamphetamine, the statutory minimum will be five, not ten, years. *See* 21 U.S.C. § 841(b)(1)(B)(viii) (defendant convicted of violation involving ten grams or more of methamphetamine must be sentenced to no less than five years). The district court thus should exercise its discretion in deciding whether to depart downward to the statutory five-year minimum on the grounds urged by Whitecotton.

III. *Disparity in sentences*

 Whitecotton argues that it was manifestly unfair that he received a ten-year sentence while Lineberry, who pled guilty and cooperated, was sentenced to thirty-seven months. Disparity in sentences between codefendants is not sufficient ground to attack a proper guidelines sentence. *United States v. Taylor*, 991 F.2d 533, 536 (9th Cir.1993) (disparity in sentencing where codefendant pled guilty not grounds for challenging sentence).

1. While in certain cases a district court may depart below a statutory minimum, those departures are strictly limited and Whitecotton does not argue that he meets the criteria for such a departure. *See* U.S.S.G. § 5C1.2 (court may depart below statutory minimum if defendant has

## CONCLUSION

Because there was no evidence that the further sales were jointly undertaken criminal activity, we remand for resentencing on the basis of the 10.82 grams involved in the initial two sales. The district court should then exercise its discretion whether to depart downward on the grounds urged by Whitecotton, to the statutory minimum of five years.

REMANDED.

little criminal history, used no violence, no serious injury resulted, was not an organizer, and has provided the government with all information regarding related offenses). Whitecotton had a criminal history and did not cooperate with the government.