**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50372 |
| Plaintiff - Appellee, | D.C. No. 5:09-cr-00089-VAP-2 |
| v. | |
| DAVID LINCOLN JOHNSON, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted May 12, 2014
Pasadena, California

Before: NOONAN, WARDLAW, and FISHER, Circuit Judges.

David Lincoln Johnson appeals his convictions and sentence for mail fraud.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in

part.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.** The district court did not abuse its discretion in denying Johnson's request to introduce evidence of his co-defendant's prior acts. The evidence that purported to show Christiano Hashimoto's prior misrepresentations was prohibited propensity evidence under Federal Rule of Evidence 404(b). *See United States v. Lukashov*, 694 F.3d 1107, 1117-18 (9th Cir. 2012). Even if the evidence had been admissible, it was not relevant. *See* Fed. R. Evid. 401. Hashimoto's past activities with other companies and his apparent misrepresentations regarding their valuations were not relevant to assessing the veracity of the witnesses here, who testified to the misrepresentations they were told by Johnson.

Additionally, the district court did not abuse its discretion in alternatively holding that Johnson's proffered evidence of Hashimoto's prior acts should be excluded under Federal Rule of Evidence 403. Presenting evidence of Hashimoto's prior acts would have been time consuming and may have potentially confused the jury. *See United States v. Bussell*, 414 F.3d 1048, 1059 (9th Cir. 2005). And, if the prior acts had been admitted, Johnson and the government would have battled over whether they involved misrepresentations made by Hashimoto without the issuers' knowledge. *Cf. id.* Furthermore, evidence establishing that Hashimoto was a liar was of minimal probative value because the jury already had evidence establishing that fact. *See United States v. Wiggan*, 700

F.3d 1204, 1213 (9th Cir. 2012) ("[A] decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question.").

2.     The district court did not err in denying Johnson's motion for a new trial based on alleged *Brady* violations. Although the government failed to timely disclose Catherine Lipscomb's presentence report ("PSR"), Gerald Gorton's presentence report, and the IRS's criminal investigation report regarding Gorton, some of the materials were already available to Johnson before trial and the failure to disclose the remaining materials did not prejudice him. *See United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013). Lipscomb's mental health condition was already available to Johnson in her change of plea transcript, which Johnson's counsel had, in fact, ordered before his trial began. Furthermore, even if Lipscomb's PSR contained evidence that was not previously available to Johnson, there is not a reasonable probability that had that evidence been disclosed, the result of Johnson's trial would have been different. *See United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011). Many other witnesses testified about Johnson's misleading statements regarding the fraudulent scheme, and use of the mails in furtherance of that scheme.

Similarly, the undisclosed materials regarding Gorton were either previously available to Johnson or not material. First, because Gorton's cardiovascular health information was self-reported and unverified, its probative value was questionable. Further, the examples of memory loss that Gorton's PSR described were careless mistakes, such as forgetting to pay a bill. The PSR did not state that Gorton experienced forms of long-term memory loss that might affect his ability to recall discussions, observations, or experiences related to Financial Solutions. Second, Gorton's refusal to cooperate with Financial Solutions' receiver is immaterial to Johnson's conviction. Third, the IRS report's statement that Hashimoto said the empennage contract was worth $100 million is cumulative. Other witnesses offered various accounts of Johnson or Hashimoto misrepresenting the value of the empennage contract. Lastly, Gorton's criminal and litigation histories were either immaterial or inadmissible. *See* Fed. R. Evid. 401, 403. Gorton was not a central witness and even if the undisclosed evidence had been used to impeach him, it would not have been material to Johnson's guilt or innocence. *See Sedaghaty*, 728 F.3d at 899. "Weighed as a whole, the evidence characterized as *Brady* material by the Defendant[]—all of which is marginal, ambiguous, cumulative, inadmissible, unreliable, inculpatory, irrelevant, or of negligible probative worth—falls far short

4

of undermining our confidence in the verdict[].” *United States v. Sarno*, 73 F.3d 1470, 1506 (9th Cir. 1995).

3.      The district court did not abuse its discretion by sentencing Johnson to a longer term of incarceration than of his co-defendants Hashimoto and Lipscomb. Unlike Hashimoto and Lipscomb, Johnson did not accept responsibility by pleading guilty and cooperating with the government. *See United States v. Laurienti*, 731 F.3d 967, 976 (9th Cir. 2013); *see also United States v. Whitecotton*, 142 F.3d 1194, 1200 (9th Cir. 1998) (“Disparity in sentences between codefendants is not sufficient ground to attack a proper guidelines sentence.”). Furthermore, while analyzing the 18 U.S.C. § 3553(a) factors, the district court concluded that Johnson played a pivotal role in the fraudulent scheme by providing the facade of a government contract that convinced many unsophisticated and vulnerable victims to invest.

4.      The district court did not plainly err in ordering Johnson to pay over $17 million in restitution. Because we have previously held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not apply to restitution, *see United States v. Green*, 722 F.3d 1146, 1149 (9th Cir. 2013), the government was not required to prove to a jury the amount of restitution beyond a reasonable doubt.

**5.** We reverse and vacate Johnson's convictions for mail fraud related to investor Robert Thompson because they are not supported by sufficient evidence. Counts two, six, and nine of the amended indictment accused Johnson of committing mail fraud by mailing three executed promissory notes to Thompson. The promissory notes were plainly part of the fraudulent scheme. They misrepresented Gentech Fabrication's interest in the empennage contract, and were used to fraudulently collect victims' money. However, when viewing the evidence in the light most favorable to the government, no rational juror could have found beyond a reasonable doubt that Thompson's promissory notes were mailed. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because Thompson did not testify, the only evidence from which the jury could infer that Thompson's promissory notes were mailed was Lipscomb's testimony describing Financial Solutions' routine practices, other investors' testimony that they received their notes in the mail, and Wendy Mazariegos' testimony that she "[s]ometimes" mailed the notes, but "[u]sually" had someone else do the mailing.

Although direct proof of mailing is not required, *see United States v. Brackenridge*, 590 F.2d 810, 811 (9th Cir. 1979) (per curiam), a mere probability that Thompson's notes were mailed is insufficient to sustain Johnson's convictions, *see United States v. Lo*, 231 F.3d 471, 476-77 (9th Cir. 2000) (reversing a mail

fraud conviction because "as the chain of inferences based on usual practices gets longer, the probability that nothing went wrong in administering those practices lessens"). First, Lipscomb's testimony was equivocal. Although Financial Solutions' procedure was to mail the notes, they were "[s]ometimes" hand-delivered. Indeed, at least two witnesses testified that some, if not the majority, of their notes were hand-delivered.[1] "Evidence of routine custom and practice *can* be sufficient to support the inference that something is mailed," *United States v. Green*, 745 F.2d 1205, 1208 (9th Cir. 1984) (emphasis added), but it is not always sufficient, *see, e.g.*, *Lo*, 231 F.3d at 476-77. When, as here, the evidence includes a general practice of mailing, numerous exceptions to that practice, and no direct proof that the letters underlying the contested counts were actually mailed, no reasonable juror, even when viewing the evidence in the light most favorable to the government, could conclude *beyond a reasonable doubt* that the underlying letters were mailed. *Cf. United States v. Miller*, 676 F.2d 359, 362 (9th Cir. 1982) (holding that evidence of mailing was sufficient even though some letters were

---

[1] From the transcript of the district court's ruling on Johnson's Rule 29 motion, it appears that Steve Denham was investor Thompson's sales agent. If this is true, there was even more reason to doubt that Thompson's notes were mailed, for Denham testified that he hand-delivered the "majority" of his client's notes. Because there is insufficient evidence to support Johnson's convictions even without establishing Denham's relationship to Thompson, we need not decide whether evidence of that connection is properly before us.

hand-delivered because the general practice, from which there were exceptions, was that hand-delivered letters were marked "delivered," and the letter underlying the mail fraud count was not marked "delivered"). We therefore reverse the convictions as to counts two, six, and nine.

6.     To "preserve the appearance of justice," we remand with direction that the case be reassigned to a different district court judge for resentencing. *See United States v. Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012). Because we reverse the mail fraud counts on arguments that the district court judge summarily dismissed, "we conclude that remand to a different judge would preserve the appearance of justice in light of the district court judge's 'potential bias' against" resentencing Johnson absent the three reversed counts. *See United States v. Quach*, 302 F.3d 1096, 1103-04 (9th Cir. 2002). We do not decide that the district court is actually biased against Johnson; indeed we doubt that she is. However, given that the district court judge both presided over the underlying trial and imposed the sentence, it may be difficult to "unring the bell" when sentencing anew.

**AFFIRMED in part, REVERSED and VACATED in part, and REMANDED to a different district court judge for resentencing.**